UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| *In re* **FLORIDA CEMENT AND CONCRETE ANTITRUST LITIGATION** | **MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown** |

*(DIRECT PURCHASER ACTION)*

| | |
|---|---|
| *In re* **FLORIDA CEMENT AND CONCRETE ANTITRUST LITIGATION** | **MASTER DOCKET NO. 09-23493-CIV-ALTONAGA/Brown** |

*(INDIRECT PURCHASER ACTION)*

## ORDER

**THIS CAUSE** is before the Court on Defendants' Motion[s] to Dismiss or, in the Alternative, to Strike, with Incorporated Memorandum of Law (the "Motions") (Case 09-23187-CIV ("Direct") [ECF No. 238]; Case 09-23493-CIV ("Indirect") [ECF No. 134]). The two Motions are identical and were filed by all Defendants in each action. The first section of the Motions seeks to dismiss or strike allegations in both the Direct Purchasers' Third Consolidated Amended Complaint ("DTCAC") and the Indirect Purchasers' Fourth Amended Consolidated Complaint ("IFACC") (collectively the "Amended Complaints") that assert the existence of a pre-February 2008 conspiracy in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, among Defendants. The remainder of each of the two Motions is addressed to the IFACC only and challenges the named Plaintiffs' standing to represent the proposed class in the Indirect action. The motion to dismiss or strike is discussed first; a discussion of the standing issue in the Indirect action then follows.

**I. Motion to Dismiss or Strike Allegations of Conspiracy Before February 2008**

On October 12, 2010, the Court issued an Order (the "October 12 Order") (Direct [ECF No. 228]; Indirect [ECF No. 130]) granting in part and denying in part two earlier motions to dismiss filed by Defendants. The October 12 Order permitted both the Direct and Indirect Purchaser Plaintiffs to file amended complaints "limited to the conduct of [Defendants] with respect to

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown
MASTER DOCKET NO. 09-23493-CIV-ALTONAGA/Brown

ready-mix concrete during the period surrounding and after the arrival of Jorge Wagner [('Wagner')] as President of Prestige [AB Management Co. LLC ('Prestige')]."[1] (Oct. 12 Order 50). Plaintiffs have read the October 12 Order to permit the filing of Amended Complaints that allege a conspiracy that existed at or before VCNA's purchase of Prestige in October 2007.[2] (*See* DTCAC ¶ 51; IFACC ¶ 38). Defendants contend "Plaintiffs' allegations of conduct prior to Mr. Wagner's 'arrival at Prestige' are irrelevant and inconsistent with the Court's [October 12] Order" and should be dismissed or stricken. (Mot. 4).

In Plaintiffs' view, "this Court recognized . . . the Plaintiffs' [Complaint] included well-pleaded 'allegations of parallel conduct upon the arrival of [Jorge] Wagner [that] are set in a context suggesting *a preceding unlawful agreement*.'" (Direct Opp'n 2 (Direct [ECF No. 244]) (emphasis and some alterations in original added)). Plaintiffs continue:

> This "context" includes VCNA's October 2007 acquisition, which brought Prestige into the conspiracy fold, and which enabled VCNA to install Wagner as Prestige's new president. Thus, the VCNA acquisition is an event "surrounding" Wagner's arrival for these purposes.

(Direct Opp'n 3).

---

[1] The pleadings upon which the Court decided the October 12 Order were not very precise about the timing of Wagner's arrival as president of Prestige, and they did not specifically mention he had served as a consultant to Prestige before he became its president. (*See, e.g.*, First MTD Reply (Direct [ECF No. 221]) ("Indeed, as Plaintiffs themselves allege, Mr. Wagner did not join Prestige or move to Florida until after VCNA acquired Prestige at the end of 2007, before which he worked in Brazil.") (citation omitted)). As a consequence, the Court did not determine the precise date Wagner "arrived" at Prestige, and used the phrases "Wagner's arrival to head Prestige," "Wagner's arrival at Prestige," and other similar phrases synonymously to refer to Wagner becoming president of Prestige. However, given that it now appears Wagner served in a consulting role at Prestige before becoming its president, the Court considers Wagner's appointment to that position to be when he "arrived at Prestige." Because the date of Wagner's arrival to work for Prestige in any capacity was not clear when the Court issued the October 12 Order and for the additional reasons explained here, this clarification does not make much difference.

[2] The Indirect Purchasers allege a class period that begins on August 1, 2007.

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown
MASTER DOCKET NO. 09-23493-CIV-ALTONAGA/Brown

This characterization of the October 12 Order is incorrect. Plaintiffs assume a conspiracy existed at the time VCNA acquired Prestige; however, the Court specifically held that was implausible. (Oct. 12 Order 37). The October 12 Order stated "Plaintiffs' allegations do not permit the Court to plausibly infer the alleged conspiracy began before Wagner arrived at Prestige . . . ." (Oct. 12 Order 41). Moreover, the Court wrote,

> Plaintiffs declare the conspiracy began in 2004 and continues to the present; however, for the period between 2004 and Wagner's arrival at Prestige, Plaintiffs manage only to allege a few instances of parallel conduct, which are explained by the concentrated nature of the cement and concrete industries in Florida. *For that period, Plaintiffs do not place their "allegations of parallel conduct . . . in a context that raises a suggestion of a preceding agreement."*

(Oct. 12 Order 40 (citing *Twombly*, 550 U.S. at 557) (emphasis added)). Instead, the Court determined the

> statements made by Wagner and Lane . . . . place some of the parallel and other business conduct analyzed above in a context that makes it plausible to infer the existence of an unlawful agreement, at least with respect to some Defendants, and only with respect to concrete in some parts of Florida during some of the class period.

(Oct. 12 Order 37).

The October 12 Order also noted, "Wagner's statements suggest a rough time frame for the timing of the agreement (sometime before the summer 2008 price increase announcements); they suggest which Defendants were involved (Cemex, Prestige, Florida Rock, and Tarmac); and they suggest Wagner was individually involved in making the agreement." (Oct. 12 Order 37 n.23). The Court observed, "it is plausible to infer that *beginning at about the time of the arrival of Wagner to head Prestige*, [Defendants] entered into an agreement to fix the price of ready-mix concrete." (Oct. 12 Order 41) (emphasis added) (footnote call number omitted). The Court's conclusions are

3

consistent with Lane's February 2009 Letter to the Department of Justice in which he wrote he was "of the firm belief that Jorge Wagner our President [sic] has engaged in activity designed to circumvent our countries [sic] trade laws." (Oct. 12 Order 38 (citing Lane Letter [ECF No. 203-1])). Plaintiffs have not added any factual allegations to the Amended Complaints that would alter the Court's decision to dismiss Plaintiffs' allegations of a conspiracy that existed prior to and independent of Wagner's involvement.

To put it differently, the Amended Complaints allege an unlawful agreement among Defendants to explain specific behavior on the part of Defendants, including certain parallel increases in the price of ready-mix concrete and parallel decisions not to compete for territory and customers. As the October 12 Order explained at length, these types of actions, even when taken by Defendants in parallel, have legitimate business explanations and, absent additional allegations of agreement, do not support a plausible inference of a conspiracy. In the October 12 Order, the Court concluded that Wagner's statements about *particular parallel actions* taken by Defendants in late 2008 and early 2009 suggested *those actions* were the result of agreement among Defendants, and specifically rejected conspiracy as a plausible explanation for any actions taken by Defendants before Wagner's arrival at Prestige. (*See* Oct. 12 Order 40–41). The Amended Complaints add no new facts, and accordingly, it remains implausible that any of Defendants' actions before Wagner began consulting for Prestige were the result of an unlawful agreement.

This raises the question of what relief is appropriate. Defendants ask the Court pursuant to Federal Rule 12(b)(6) to dismiss allegations in the Amended Complaints that suggest the existence of a conspiracy before February 2008, which is the date Defendants say Wagner became a consultant

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown  
MASTER DOCKET NO. 09-23493-CIV-ALTONAGA/Brown

for Prestige. In the alternative, Defendants ask for those allegations to be stricken from the Amended Complaints as "immaterial" under Federal Rule of Civil Procedure 12(f). Defendants' primary concern is "additional, unwarranted discovery burdens and unnecessary additional associated expenses." (Mot. 4). Defendants expand on this argument in their Reply (Direct [ECF No. 246] 9; Indirect [ECF No. 144] 9) where they contend, "Having failed To Plead Any Factual Basis To Support An Earlier Conspiracy Period, Plaintiffs Are Not Entitled to Discovery Regarding That Earlier Period."

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Because the scope of discovery is tied to the claims and defenses asserted by the parties, allowing the Plaintiffs to allege a conspiracy based on an overly broad interpretation of the October 12 Order would increase the discovery burden on Defendants, and conversely, restricting Plaintiffs' conspiracy claims to the language of the October 12 Order would reduce the scope of permissible discovery. This dilemma suggests the Court should choose a precise date when Plaintiffs' factual allegations nudge their conspiracy claim from implausible to plausible. However, there are two problems with that approach.

First, it is incorrect to assume a class period beginning with Wagner's arrival at Prestige would categorically prohibit Plaintiffs from seeking discovery of documents or other information created before that date. The relevancy standard of Rule 26(b)(1) governs the scope of discoverable material, and there may be *some* information relevant to a post-Wagner conspiracy that was created by Defendants before Wagner began work at Prestige. Second, choosing a such a date would create a false sense of precision. It is clear based on the allegations in the Plaintiffs' Complaints that

5

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown
MASTER DOCKET NO. 09-23493-CIV-ALTONAGA/Brown

conspiracy is a plausible explanation for certain actions taken by Defendants in late 2008 and early 2009 and also clear that conspiracy is not a plausible explanation for Defendants' actions in late 2007; but selecting a particular date within that range amounts to guessing the day the alleged conspirators formed the alleged agreement. Along those lines, Plaintiffs contend "[t]here is no basis for this Court now to make the time-period ruling that Defendants seek [because t]he p[arties] will conduct discovery, and Plaintiffs will have the burden of moving for class certification and thereafter of proving their conspiracy allegations on the merits." (Direct Opp'n 4). Plaintiffs are largely correct, except that by refusing to adopt Defendants' February 2008 date, the Court inevitably affirms the Plaintiffs' too-early August and October 2007 dates.

Fortunately, the Federal Rules provide a simple way to address the Defendants' concerns over discovery costs while ensuring Plaintiffs receive discovery of the information they need: Plaintiffs are entitled to discover from Defendants all information which is relevant to Plaintiffs' claims. *See* Fed. R. Civ. P. 26(b)(1). What must be emphasized, however, is that "Plaintiffs' allegations do not permit the Court to plausibly infer the alleged conspiracy began before Wagner arrived at Prestige . . ." (Oct. 12 Order 41), and so Plaintiffs are not entitled to discovery of material that would be relevant *only* to a claim of conspiracy during that period. Accordingly, with this proviso regarding the scope of discovery in mind, all allegations of a conspiracy that began before Wagner began consulting for Prestige are dismissed.

### II.     Motion to Dismiss the Indirect Purchaser Plaintiffs' Fourth Amended Consolidated Complaint

Defendants seek dismissal of the IFACC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because the IFACC fails to allege that Sterling Development Company ("Sterling") or John

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown
MASTER DOCKET NO. 09-23493-CIV-ALTONAGA/Brown

Miller ("Mr. Miller") "suffered an 'injury in fact,' and thus [Indirect Plaintiffs] have neither adequately pled a claim nor shown that they have standing to pursue the claims alleged." (Mot. 5). Defendants contend the IFACC does not allege Sterling purchased any ready-mix concrete during the alleged conspiracy period and could not have been injured by the conspiracy. (*See id*. 6). Similarly, Defendants maintain the IFACC does not allege Mr. Miller purchased any ready-mix concrete from any Defendant at any point.³ Consequently, Defendants contend neither Sterling nor Mr. Miller has been injured by the alleged conspiracy, and therefore argue these Plaintiffs lack standing to represent the purported class of Indirect Purchasers of ready-mix concrete.

The resolution of this question has been complicated by the filing of another motion. On December 17, 2010, the Indirect Purchaser Plaintiffs filed a Renewed Motion for Leave to File Fifth Amended Consolidated Complaint to Add Class Representative Indirect Purchaser Plaintiffs (the "Joinder Motion") [ECF No. 143]. The Joinder Motion "seek[s] to add three class representatives for purposes of curing any purported insufficiencies [in the IFACC]." (Joinder Mot. 2). Although the Joinder Motion is opposed (*see* Reply 21), it shows good cause to permit the addition of the three parties. The Joinder Motion points out the Court imposed a stay on discovery during the resolution of the previous motions to dismiss during the June 22nd Hearing and acknowledged the pre-trial schedule would have to be changed. (*See* Hr'g Tr. 123:17–19 (Direct [ECF No. 202]) ("THE COURT: And you have me on record, I recognize the schedule is going to have to be modified.")). No new joint scheduling order or deadline to amend parties is in now place. Denying Indirect Plaintiffs joinder of these three parties would be highly prejudicial as it would likely lead to

---

³ Mr. Miller is alleged to have purchased gunite, which Defendants distinguish from ready-mix cement, from VCNA Gunite Holding Company and from Prestige Gunite — neither of which is a Defendant in the Indirect Purchaser Action. (*See* Mot. 12 (citing IFACC ¶¶ 16–19)).

7

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown
MASTER DOCKET NO. 09-23493-CIV-ALTONAGA/Brown

dismissal of the current named Plaintiffs for lack of standing. Because the Joinder Motion is timely, Plaintiffs may file an amended complaint to add those three parties.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motions **(Direct [ECF No. 238]; Indirect [ECF No. 134])** are **GRANTED in part** and **DENIED in part**.

2. The Joinder Motion **[ECF No. 143]** is **GRANTED**.

3. The Plaintiffs are limited to alleging a ready-mix concrete conspiracy that began no earlier than when Wagner first arrived as a consultant at Prestige. All allegations in the Amended Complaints that allege a conspiracy formed before Wagner's arrival as a consultant at Prestige are **DISMISSED**.

4. Direct Purchaser Plaintiffs shall file a Fourth Consolidated Amended Complaint **no later than January 4, 2011**.

5. Indirect Purchaser Plaintiffs shall file their Fifth Amended Consolidated Complaint **no later than January 4, 2011**. Indirect Purchaser Plaintiffs may also amend the complaint to name the three new Plaintiffs identified in their Joinder Motion.

6. The Motion to Dismiss **(Indirect [ECF No. 134])** the IFACC for lack of standing is **DENIED as moot**.

7. The parties are directed to prepare and file a joint scheduling report, as required by Local Rule 16.1, **on or before January 10, 2011**.

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown
MASTER DOCKET NO. 09-23493-CIV-ALTONAGA/Brown

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of December, 2010.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record