UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

IN RE FLORIDA CEMENT AND
CONCRETE ANTITRUST
LITIGATION
*(DIRECT PURCHASE ACTION)*
_____/


## MEMORANDUM IN SUPPORT OF THE DIRECT PURCHASER PLAINTIFFS' MOTION FOR AN ORDER GOVERNING INTERVIEWS OF FORMER EMPLOYEES


### PRELIMINARY STATEMENT

Direct Purchaser Plaintiffs ("Plaintiffs") move this Court for an Order holding that confidentiality agreements between Defendants and their former employees do not prevent those former employees from communicating informally and privately with Plaintiffs' counsel to discuss factual matters relevant to this litigation. Informal interviews in the context of litigation are a time-honored fact-gathering tool. Accordingly, under Florida law, an attorney is permitted to interview former employees of an adverse party. Insofar as the confidentiality agreements on which Defendants rely may be construed to apply to former employee communications in litigation-related interviews, those agreements are unenforceable as a matter of public policy. A party simply may not use such agreements to bar its adversary from access to relevant factual information. Finally, there is no merit to Defendants' assertion that they are entitled to advance notice of the names of the former employees whom Plaintiffs' counsel may interview.

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

## STATEMENT OF FACTS

Here, as in many types of cases, former employees of the litigants have factual information relevant to the litigation.  Ordinarily, the parties would simply interview those individuals who were willing to provide such information.  Here, however, Defendants and their former employees have entered into agreements with confidentiality or "non-disclosure" provisions ("NDAs").  As defense counsel has stated:

> [E]ach defendant has agreements with at least some, and in some cases virtually all, of its employees that include commitments with respect to confidentiality and return of company documents.  Typically, these obligations continue beyond the employee's departure from the company.  The particular provisions of these agreements differ among companies, over time, and in some cases among employees.  In addition, the defendant companies also generally have confidentiality agreements with former employees reached upon the employee's separation from the company.

Affidavit of Jay L. Himes, sworn to May 13, 2011 ("Himes Aff."), Ex. C.

Predictably, these NDAs are so broad in coverage that they could be construed to prohibit disclosure of all non-public facts relating to Defendants' business operations, including the activities involved in this case.  Consequently, a former employee risks breaching an NDA by talking to Plaintiffs' counsel about facts relevant to this litigation.  Accordingly, Plaintiffs sought Defendants' concurrence that their NDAs do not bar interviews of former employees for purposes of this case.  *See* Himes Aff. ¶ 6 & Ex. B.  We also have proposed comprehensive guidelines for such interviews that would be applicable to both sides.  Himes Aff., Ex. A.

Defendants refused to agree to those guidelines, despite an extended meet and confer process consisting of written and oral exchanges between the two sides.  Himes Aff. ¶¶ 6-10.  To the contrary, Defendants insist that Plaintiffs disclose the identities of the former employees to be interviewed to Defendants in advance, so that they may determine "specific contractual obligations, the degree to which [the former employee] possess confidential or proprietary and/or

2

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

attorney-client privileged information and the like." *Id.*, Ex. C at 2.  To be sure, limits on the disclosure of sensitive business information, and avoiding the disclosure of privileged communications, are matters that should be addressed here.  At the same time, however, weighty considerations counsel in favor of permitting private interviews and anonymity for former employees who do not wish their former employer to know about their discussions.

For these reasons, our proposed interview guidelines, among other things: (1) authorize an interviewing attorney to honor a former employee's request for anonymity, unless post-interview disclosure is otherwise required by law or Court Order in the action; (2) require that all information provided in any such interview be treated as "Highly Confidential" under the Protective Order entered in this case, thus restricting significantly use of the information; (3) provide for an express instruction to the former employee, at the start of any interview, to refrain from disclosing privileged information, as well as an obligation to alert the Defendant-former employer if there is any inadvertent disclosure of privileged material; and (4) bar use of any statements obtained as party admissions. *Id.*, Ex. A, ¶¶ 3, 4, 6 and 7.

Both sides agree that this matter is ripe for resolution by the Court.  The Plaintiffs thus move for relief governing the interviews of former employees for both sides.  The basic issues are twofold:  (1) whether prior notice has to be given before a former employee can be interviewed, and (2) whether the interviewing attorney may honor the former employee's request for anonymity where disclosure is not otherwise required by law or Court order in the action. *See* Himes Aff., ¶ 9 & Exs. G & H.

As we demonstrate below, the Court should grant the relief that we seek.  Our proposed guidelines – which incorporate a number of Defendants' own suggestions – strike an appropriate balance.  The fact that a former employee may possess sensitive business information – or may,

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

conceivably have had contact with an employer's counsel or otherwise come to possess privileged information – are not grounds for barring informal interviews absent advance notice to the former employer.

## ARGUMENT

### I.    PLAINTIFFS HAVE THE RIGHT TO CONDUCT INFORMAL INTERVIEWS OF DEFENDANTS' FORMER EMPLOYEES.

Courts have long recognized the importance of informal interviews in litigation.  For example, in *Nestor v. Posner-Gerstenhaber*, 857 So. 2d 953 (Fla. 3d D.C.A. 2003), *review denied*, 869 So. 2d 540 (Fla. 2004), the Court expressly permitted informal interviews, as opposed to requiring depositions, because there was "no need to make the [litigants] jump through legal hoops to obtain information the petitioners agree may be disclosed." *Id*. at 955 (citing *H.B.A. Mgmt., Inc. v. Estate of Schwartz*, 693 So. 2d 541 (Fla. 1997)).

In *H.B.A. Mgmt*, cited by the *Nestor* court, the Florida Supreme Court confirmed the use of informal interviews, holding that the "no-contact" provisions of Florida Ethics Rule 4.2 did not prohibit a party from interviewing its adversary's former employees.  As the Court explained:

> [T]he purpose of the communication rule is not to protect a corporate party from revelation of prejudicial facts, but rather to preclude interviewing of employees who have authority to bind the corporation.

*Id*. at 544 (quoting Florida Bar Professional Ethics Comm. Op. 88-14 at 3 (Mar. 7, 1989) and *Wright v. Group Health Hosp.*, 103 Wash. 2d 192, 691 P.2d 564, 569 (1984)).  But when an individual's employment ends, so too does the connection that "permitted that employee to create liability for her employer or to bind or make admissions for that employer."  693 So. 2d at 546.  Therefore, the no-contact rule does not bar interviews of former employees.  (Our proposed

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

guidelines reinforce this case law by expressly providing that statements by those interviewed will not be admissible as admissions of the former employer.  Himes Aff., Ex. A, ¶ 6.

Like the Florida Supreme Court, the New York Court of Appeals has held that New York's no-contact disciplinary rule does not apply to interviews of former employees:

> [T]he Appellate Division's blanket rule closes off avenues of informal discovery of information that may serve both the litigants and the entire justice system by uncovering relevant facts, thus promoting the expeditious resolution of disputes.  Foreclosing all direct, informal interviews of employees of the corporate party unnecessarily sacrifices the long-recognized potential value of such sessions. . . .  Costly formal depositions that may deter litigants with limited resources, or even somewhat less formal and costly interviews attended by adversary counsel, are no substitute for such off-the-record private efforts to learn and assemble, rather than perpetuate, information.

*Neisig v. Team I*, 76 N.Y.2d 363, 372, 558 N.E.2d 1030, 1034, 559 N.Y.S.2d 493, 497 (1990). *See also Cram v. Lamson & Sessions Co.*, 148 F.R.D. 259, 262 (S.D. Iowa 1993) ("[P]ermitting contact with former employees furthers the laudable goal of early and inexpensive disclosure of factual information concerning the merits of a case.").[1]

These decisions are part of a body of case law recognizing the importance of counsel's ability to meet informally with witnesses.  A leading case is *IBM  v. Edelstein*, 526 F.2d 37 (2d Cir. 1975).  There, IBM sought to interview individuals that the Department of Justice listed as trial witnesses in its antitrust case against the company.  The trial court directed "that if any one of you seeks to interview a witness in the absence of opposite counsel, that you do it with a stenographer present and so that it can be available to the Court, for the Court to see it. . . ."  *Id.*

---

[1] Indeed, the *Neisig* court further ruled that interviews of certain current employees may also be conducted as well, a view similarly adopted in *Lee Mem'l Health Sys. v. Smith*, 56 So. 3d 808 (Fla. 2d D.C.A. 2011).

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

at 41. This, of course, prevented counsel from interviewing witnesses privately. The Second

Circuit took the unusual step of granting a writ of mandamus, noting:

> The trial judge apparently looked upon an interview as the taking
> of deposition. In fact, there is little relation between them. A
> lawyer talks to a witness to ascertain what, if any, information the
> witness may have relevant to his theory of the case, and to explore
> the witness' knowledge, memory and opinion frequently in light of
> information counsel may have developed from other sources. This
> is part of an attorney's so-called work product.

*Id*. at 41.

The rulings below, the Second Circuit added, "not only impair the constitutional right to

effective assistance of counsel but are contrary to time-honored and decision-honored principles,

namely, that counsel for all parties have a right to interview an adverse party's witnesses (the

witnesses willing) in private, without the presence or consent of opposing counsel and without a

transcript being made." *Id*. at 42.

As these decisions recognize, private interviews of an opponent's former employees are

an important part of counsel's case preparation, which the courts protect from interference by the

litigant's adversary.

## II.    DEFENDANTS' NDAs DO NOT BAR INFORMAL INTERVIEWS CONDUCTED, WITHOUT PRIOR NOTICE, TO OBTAIN RELEVANT INFORMATION.

Despite this settled case law, Defendants have invoked their NDAs with former

employees to insist that Plaintiffs provide advance notice of each former employee before

interviewing the individual. *See* Himes Aff., Exs. C, F & H. However, the courts of Florida and

elsewhere reject this approach. The use of confidentiality agreements to bar access to factual

matters related to a pending litigation is against public policy. To the extent that Defendants'

NDAs seek to do so, they are unenforceable. And just as Defendants may not use their NDAs to

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

cut off witness access, so too they may not insist on advance notice of the identities of those former employees who may be interviewed.

A.       **Defendants' NDAs Cannot Bar Witness Access as a Matter of Public Policy.**

In *Scott v. Nelson*, 697 So. 2d 1300 (Fla. 1st D.C.A. 1997), Scott settled a prior litigation, entering into an agreement that included a confidentiality provision. Thereafter, Scott sought to use the confidentiality provision to bar the other settling party from testifying in another action against Scott. The Court rejected Scott's effort, noting that it was "improper to buy the silence of witnesses with a settlement agreement when the facts of one controversy may be relevant to another." *Id.* at 1301. *See also Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 87-88 (E.D.N.Y. 1981) (denying a motion to bar production of a report subject to a confidentiality provision because parties cannot "contract privately for the confidentiality of documents, and foreclose others from obtaining, in the course of litigation, materials that are relevant to their efforts to vindicate a legal position").

Likewise, in *Nestor v. Posner-Gerstenhaber*, 857 So. 2d 953 (Fla. 3d D.C.A. 2003), a contested proceeding arose from the probate of the will of Victor Posner. Prior to Posner's death, his employees had signed confidentiality agreements that barred them from disclosing essentially all aspects of Posner's private and business affairs except as required by law. *Id.* at 954. The respondents in the will contest sought to interview one of Posner's former employees, Breen, but were prevented from doing so by the confidentiality agreement. Nullifying the agreement and permitting the interview, the Court held:

> The petitioners agree that Breen can disclose the information the
> grandchildren seek, but urge that Breen only be allowed to disclose
> information at a formal deposition or at trial. *Contractual
> confidentiality agreements, however, cannot be used to adversely
> interfere with the ability of nonparties to pursue discovery in
> support of their case.* . . . Informal ex parte interviews with former
> employees are allowed, . . . and ex parte interviews with current

7

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

employees may be allowed as well. . . . We thus find no need to
make the grandchildren jump through legal hoops to obtain
information the petitioners agree may be disclosed.

*Id.* at 955 (authorities omitted). *Accord, Smith v. TIB Bank of the Keys*, 687 So. 2d 895 (Fla. 3d

D.C.A. 1997); *Neiman v. Naseer*, 47 So. 3d 954 (Fla. 4th D.C.A. 2010).

In re JDS Uniphase Corp. Sec. Litig., 238 F. Supp. 2d 1127 (N.D. Cal. 2002), is also on

point.  In that case, former employees were willing to discuss relevant factual information with

plaintiffs' counsel, but believed that confidentiality agreements with their former employer

prohibited their doing so.  The Court held that the defendant "cannot use its confidentiality

agreements to chill former employees from voluntarily participating in legitimate investigations

into alleged wrongdoing by JDSU." *Id.* at 1137.  There was, the Court further emphasized, no

"public policy in favor of allowing employers to muzzle their employees with overbroad

confidentiality agreements." *Id.* at 1136.  *See also Management Insights, Inc. v. Tricon Global

Restaurants, Inc.*, No. 01-1040-MLB, 2001 WL 1325955 (D. Kan. Oct. 24, 2001)

(confidentiality agreements between plaintiff and its employees did not preclude interviews of

former employees); *Maddox v. Williams*, 855 F. Supp. 406, 415 (D.D.C. 1994) (counseling

against permitting defendants to direct attention from "their unlawful or potentially unlawful

acts" by involving NDAs to assert a "violation of propriety information, interference with

contract, and the like"), *aff'd sub nom., Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d

408 (D.C. Cir.1995).

Indeed, invalidating NDAs, such as those used by Defendants, when invoked in a

litigation context to bar interviews of former employees is particularly appropriate to address a

serious ethical tension that would otherwise be presented.  Florida Code of Ethics § 4-3.4

(adopted by this Court via Local Rule 11.1(c)) mandates that "[a] lawyer shall not: (a) unlawfully

obstruct another party's access to evidence . . . [or] (f) request a person other than a client to

refrain from voluntarily giving relevant information to another party. . . ." Judicial authorization

of informal interviews, regardless of the existence of an NDA, thus avoids litigation squabbling

among counsel over their ethical obligations. *Cf. Bauer*, Buying Witness Silences: Evidence-

Suppressing Settlements and Lawyers Ethics, 87 Or. L. Rev. 481, 483 ("Defendants should not

be able to buy the silence of witnesses with a settlement agreement"); *id.* at 487 (asserting that

ethical violations can arise from negotiating a settlement with a non-cooperation provision)

(2008).

There remains, then, only the matter of whether Defendants may properly insist on

advance notice of each former employee's identity before an interview may be conducted. The

case law answer, quite simply, is that they may not.

## B. Defendants May Not Require Notice Before Former Employees Are Interviewed.

Weighty considerations counsel against requiring pre-interview identification of a former

employee. First, anonymity protects the former employee from actual or "perceived economic

and social consequences that could result from their actions." *Cram v. Lamson & Sessions Co.*,

148 F.R.D. 259, 262 (S.D. Iowa 1993). Anonymity also allows counsel to obtain the facts

informally and in a more relaxed atmosphere before opposing counsel has had an opportunity to

intervene in the process. *See generally id.* at 261-62.

Accordingly, courts have recognized the need to protect the identity of confidential

witnesses, including former employees. For example, in *In re MTI Tech. Corp. Sec. Litig.*, No.

SACV 00-0745 DOC, 2002 WL 32344347, at *5 (C.D. Cal. June 13, 2002), the Court

emphasized the "important public policy concerns implicated by disclosure of former employees

acting as informants." As the Court explained:

> Although the whistle-blower privilege is not available in this
> private suit, that does not lessen the need to consider the practical

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

> results of an order requiring disclosure of the employees'
> identities. The Fifth Circuit generally recognized that former
> employees acting as informers could face serious consequences if
> their identities were revealed by plaintiff's counsel. *See Hodgson*
> *v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306
> (5th Cir. 1972). The court noted that although defendant's counsel
> may ultimately obtain the same information from the former
> employees without disclosure, including whether they have spoken
> to plaintiff's counsel, whether the witness is approached as an
> informant or merely an uninterested witness may have significant
> consequences. *See Hodgson*, 459 F.2d at 306 (noting that when
> counsel speaks to a witness, counsel can then ascertain "whether
> the information was given reluctantly or voluntarily, whether the
> tone and manner in which was given it was friendly to the
> defendant or unfriendly and whether it was accusatory or
> favorable.") Thus, there is a legitimate policy concern that
> militates against requiring disclosure.

*Id.* at *5. *Accord In re Ashworth, Inc. Sec. Litig.*, 213 F.R.D. 385, 389, (S.D. Cal. 2002). *See*

*also In re Cigna Corp. Sec. Litig.*, No. Civ.A. 02-8088, 2006 WL 263631, at *3 (E.D. Pa. Jan.

31, 2006) (identifying confidential sources "would chill informants from providing critical

information").

In turn, courts have permitted informal interviews to proceed without prior notice to

counsel for the former employer. *See, e.g., Wagner v. City of Holyoke*, 183 F. Supp. 2d 289, 294

(D. Mass. 2001) ("The court… will not require Plaintiffs to identify to Defendant the ten or so

employees they intend to contact"); *Summers v. Rockwell Int'l Corp., Inc.*, No. C2-92-301, 1993

WL 1480622 (S.D. Ohio Apr. 9, 1993) (permitting interviews without prior notice to the

defendants under guidelines similar to those proposed here); *Bryant v. Yorktowne Cabinetry,*

*Inc.*, 538 F. Supp. 2d 948 (W.D. Va. 2008) (permitting interviews of former employees without

requiring prior notice); *Totherow v. Rivier College*, No. 05-C-296, 2007 WL 811734 (N. H.

Super. Ct. Feb. 20, 2007) (same).

Defendants, however, argue that the former employee's identity must be disclosed, pre-

interview, in order for them to assess the individual's NDA obligations and to evaluate the extent

to which the individual may possess proprietary or privileged information.  This argument fails for three reasons.

First, as matter of practice, NDAs are drafted broadly.  A former employee will inevitably risk a breach by discussing virtually any the former employer's business affairs.  *See Nestor*, 857 So. 2d at 954 (quoting the relevant NDA in that case).  There is no basis to believe that Defendants' NDAs are any different.  As a result, it is disingenuous for Defendants to assert that they need to make an individual-by-individual review to determine whether a particular NDA covers a specific former employee's statements.

Second, under our proposed guidelines, whatever information a former employee provides will be treated as "Highly Confidential" for purposes the Protective Order here.  *See* Himes Aff., Ex. A, ¶ 7.  As such, interview information could only be disclosed to outside counsel, experts, the Court, clerical personnel, and actual or potential witnesses under limited circumstances.  (Persons who did not receive the information independent of the litigation could not receive it at all.)  *See* Stipulated Protective Order (May 25, 2010) Dkt. No. 185 ¶¶6 and 7.  These Protective Order instructions will afford Defendants ample protection for any information provided during an interview.

Finally, the possibility that a former employee may possess privileged information is not enough to require advance notice and identification.  The courts recognize that former employees may be interviewed, provided that the interviewing counsel carefully instructs the individual to refrain from divulging any privileged information – precisely what we propose must happen here.  Himes Aff., Ex. A, ¶¶ 4(e) and (f).  Thus, for example, in *Concerned Parents of Jordan Park v. Hous. Auth.*, 934 F. Supp. 406, 409 (M.D. Fla. 1996), the Court declined to disqualify plaintiffs' counsel for having interviewed defendant's former employee, noting that "[p]laintiffs'

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

counsel was only ethically obliged to advise Mr. White not to divulge information subject to the attorney-client privilege . . ."

*Muriel Siebert & Co., Inc. v. Intuit Inc.*, 8 N.Y.3d 506, 868 N.E.2d 208, 836 N.Y.S.2d 527 (2007), is similar.  There, the interviewed former employee was intimately involved in the transactions underlying the case, and was, therefore, "at one time privy to Siebert's privileged and confidential information."  *See Muriel*, 8 N.Y.3d at 511, 868 N.E.2d at 210, 836 N.Y.S. at 530.  The New York Court of Appeals denied disqualification, however, as the interviewing attorneys "properly advised Dermigny [the former employee] of their representation and interest in the litigation, and directed Dermigny to avoid disclosing privileged or confidential information.  They also directed Dermigny not to answer any questions that would lead to the disclosure of such information."  *See Muriel*, 8 N.Y.3d at 512, 868 N.E.2d at 211, 836 N.Y.S. at 530.

And, in *Judd v. Take-Two Interactive Software, Inc.*, No. 07 Civ, 7932, 2008 WL 906076 (S.D.N.Y.  Apr. 3, 2008), defendants declined to provide plaintiff with the last known addresses of potential witnesses, asserting that some of the individuals were likely to have access to privileged information.  The Court directed the defendants to provide the addresses without requiring notice before interviews:

> [T]he Court must assume, until demonstrated otherwise, that all attorneys before this Court will behave properly as officers of the Court.  In conducting any *ex parte* interviews, the Court expects that plaintiff's attorneys would advise any interviewee of the attorneys' representation and interest in the ongoing litigation, and would direct the former employee to avoid disclosing privileged or confidential information, not to answer any questions that would lead to the disclosure of such information, and would ensure that the interviewee understands those admonitions before conducting the interview.

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

*Id.* at \*2. *See also Cram*, 148 F.R.D. at 266 ("This court places no restrictions on *ex parte* communications with former employees, managerial or otherwise, of Defendant to the extent that no attorney-client confidences are involved in such communications.  Thus, an attorney communicating with the former employees of the opposing party may not inquire into privileged attorney-client communications . . .").

The guidelines that we propose will protect each Defendant's legitimate privilege interest.  Each former employee will be instructed not to reveal or discuss any privileged communications.  Each interviewing attorney will have the responsibility to avoid eliciting any such communications.

Accordingly, under Plaintiffs' proposed guidelines, former employees may be interviewed without giving advance notice to counsel for the former employee, while protecting the former employer's interests in proprietary and privileged information.

## CONCLUSION

For these reasons, the Direct Purchaser Plaintiffs' motion should be granted.  Specifically, the Court should rule that:  (a) Defendants' NDAs do not prevent former employees from discussing factual matters concerning this case with Plaintiffs' counsel during informal interviews; and (b) defense counsel are not entitled to advance notice of such interviews. Finally, the Court should "so order" our proposed interview guidelines (Himes Aff., Ex. A), which were prepared with input from defense counsel, and which will cover all interviews of former employees by either side.

13

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

Date: May 13, 2011

Respectfully submitted,

 /s/ Robert C. Josefsberg
Robert C. Josefsberg (Florida Bar No. 040856)
Victor M. Diaz, Jr. (Florida Bar No. 503800)
Katherine W. Ezell (Florida Bar No. 114771)
Alexander Rundlet (Florida Bar No. 692301)
**PODHURST ORSECK, P.A.**
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: 305.358.2800
Fax: 305.358.2382
rjosefsberg@podhurst.com
vdiaz@podhurst.com
kezell@podhurst.com
arundlet@podhurst.com

*Plaintiffs' Interim Liaison Counsel*

Jay L. Himes
Hollis Salzman (Florida Bar No. 947751)
Gregory S. Asciolla
Seth R. Gassman
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: 212.907.0700
Fax: 212.818.0477
hsalzman@labaton.com
jhimes@labaton.com
gasciolla@labaton.com
sgassman@labaton.com

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

Michael D. Hausfeld
William P. Butterfield
Brian A. Ratner
Ralph J. Bunche
**HAUSFELD LLP**
1700 K Street, NW
Suite 650
Washington, DC 20006
Telephone: 202.540.7200
Fax: 202.540.7201
mhausfeld@hausfeldllp.com
wbutterfield@hausfeldllp.com
bratner@hausfeldllp.com
rbunche@hausfeldllp.com

William A. Isaacson
Matthew W. Friedrich
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Ave. NW, Suite 800
Washington, DC 20015
Telephone: 202.237.2727
Fax: 202.237.6131
wisaacson@bsfllp.com
mfriedrich@bsfllp.com

Stephen N. Zack (Florida Bar No. 145215)
Mark J. Heise (Florida Bar No. 771090)
**BOIES, SCHILLER & FLEXNER LLP**
100 SE Second Street, Suite 2800
Miami, FL 33131
Telephone: 305.539.8400
Fax: 305.539.1307
szack@bsfllp.com
mheise@bsfllp.com

*Plaintiffs' Interim Co-Lead Class Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 13, 2011, the foregoing MEMORANDUM IN

SUPPORT OF THE DIRECT PURCHASER PLAINTIFFS' MOTION FOR AN ORDER

GOVERNING INTERVIEWS OF FORMER EMPLOYEES was filed with the Clerk of the

Court using the CM/ECF system which will send a notice of electronic filing to those listed on

the attached Service List.

Respectfully submitted,

/s/ Katherine W. Ezell
Katherine W. Ezell (Florida Bar No. 114771)
**PODHURST ORSECK, P.A.**
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: 305.358.2800
Fax: 305.358.2382
kezell@podhurst.com

CASE NO.: 09-23187-CIV-ALTONAGA/BANDSTRA

## SERVICE LIST

IN RE: FLORIDA CEMENT AND CONCRETE ANTITRUST LITIGATION
MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/ BANDSTRA

United States District Court – Southern District of Florida – Miami Division

| | |
|---|---|
| **SHEPARD GOLDFEIN, ESQ.**<br>**PAUL M. ECKLES, ESQ.**<br>**CLIFFORD H. ARONSON, ESQ.**<br>**MATTHEW M. MARTINO, ESQ.**<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, New York 10036-6522<br>Telephone: 212-735-3000<br>Facsimile: 212-735-2000<br>Email: Shepard.goldfein@skadden.com<br>Email: paul.eckles@skadden.com<br>Email: clifford.aronson@skadden.com<br>Email: matthew.martino@skadden.com<br><br>**MICHAEL NACHWALTER, ESQ.**<br>**ELIZABETH B. HONKONEN, ESQ.**<br>**JALAINE GARCIA, ESQ.**<br>Kenny Nachwalter, P.A.<br>1100 Miami Center<br>201 South Biscayne Boulevard<br>Miami, FL 33131<br>Telephone: 305-373-1000<br>Facsimile: 305-373-1861<br>Email: mnachwalter@kennynachwalter.com<br>Email: ebh@kennynachwalter.com<br>Email: jgarcia@kennynachwalter.com<br><br>**Counsel for Defendant**<br>**Cemex Corp.** | **RYAN SHORES, ESQ.**<br>Hunton & Williams LLP<br>1900 K Street, NW<br>Washington, D.C.<br>Telephone: 202-955-1500<br>Facsimile: 202-778-2201<br>Email: rshores@hunton.com<br><br>**D. BRUCE HOFFMAN, ESQ.**<br>**MARTY STEINBERG, ESQ.**<br>Hunton & Williams LLP<br>1111 Brickell Avenue, Suite #2500<br>Miami, FL 33131<br>Telephone: 305-810-2500<br>Facsimile: 305-810-2460<br>Email: bhoffman@hunton.com<br>Email: msteinberg@hunton.com<br><br>**Counsel for Defendant**<br>**Florida Rock Industries, Inc.** |

**FRANK G. BURT, ESQ.**
Jorden Burt LLP
1025 Thomas Jefferson Street N.W.
Suite #400 East
Washington, D.C. 20007
Telephone: 202-965-8100
Facsimile: 202-965-8104
Email: fgb@jordenusa.com

**LAURA COFER TAYLOR, ESQ.**
**JAMES L. COOPER, ESQ.**
**RYAN Z. WATTS, ESQ.**
Arnold & Porter LLP
555 12th Street NW
Washington, D.C. 20004
Telephone: 202-942-5000
Facsimile: 202-942-5999
Email: Laura.taylor@aporter.com
Email: James.cooper@aporter.com
Email: Ryan.watts@aporter.com

**RICHARD J. OVELMEN, ESQ.**
Jorden Burt LLP
777 Brickell Avenue, Suite #500
Miami, FL 33131
Telephone: 305-371-2600
Facsimile: 305-372-9928
Email: rjo@jordenusa.com

**Counsel for Defendant**
**Tarmac America LLC**

**RICHARD B. BROSNICK, ESQ.**
Butzel Long, a professional corporation
380 Madison Avenue, 22nd Floor
New York, NY 10017
Telephone: 212-818-1110
Facsimile: 212-818-0494
Email: brosnick@butzel.com

**CHRISTOPHER B. HOPKINS, ESQ.**
Akerman Senterfitt
Esperante Building, 4th Floor
222 Lakeview Avenue, Suite 400
West Palm Beach, FL 33401-6147
Telephone: 561-653-5000
Facsimile: 561-659-6313
Email: christopher.hopkins@akerman.com

**Counsel for Defendant**
**Prestige AB Management Co., LLC**

| ARTHUR H. RICE, ESQ.<br>JODI N. COHEN, ESQ.<br>Rice Pugatch Robinson & Schiller, P.A.<br>101 N.E. Third Avenue, Suite 1800<br>Fort Lauderdale, FL 33301<br>Telephone: 954-462-8000<br>Facsimile: 954-462-4300<br>Email: arice.ecf@rprslaw.com<br>Email: jcohen@rprslaw.com<br><br>**Indirect Purchaser Plaintiffs' Interim Co-Lead Class Counsel** | DAVID E. KOVEL, ESQ.<br>KENNETH G. WALSH, ESQ.<br>DANIEL HUME, ESQ.<br>Kirby Mcinerny LLP<br>825 Third Avenue, 16th Floor<br>New York, NY 100022<br>Telephone: 212-371-6600<br>Facsimile: 212-751-2540<br>Email: dkovel@kmllp.com<br>Email: kwalsh@kmllp.com<br>Email: dhume@kmllp.com<br><br>**Indirect Purchaser Plaintiffs' Interim Co-Lead Class Counsel** |
| HERMAN J. RUSSOMANNO, ESQ.<br>HERMAN J. RUSSOMANNO, III, ESQ.<br>Russomanno & Borrello<br>150 W. Flagler St., Suite 2800<br>Miami, FL 33130-1560<br>Telephone: 305-373-2101<br>Facsimile: 305-373-2103<br>Email: hrussomanno@russomanno.com<br>Email: herman2@russomanno.com<br><br>**Indirect Purchaser Plaintiffs' Liaison Counsel** | |

3