IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE FLORIDA CEMENT AND
CONCRETE ANTITRUST LITIGATION

MASTER DOCKET NO. 09-23187-
CIV-ALTONAGA/BANDSTRA

_____/

(DIRECT PURCHASER ACTION)

**DIRECT PURCHASER PLAINTIFFS' REPLY MEMORANDUM
IN FURTHER SUPPORT OF THEIR MOTION FOR AN ORDER
<u>GOVERNING INTERVIEWS OF FORMER EMPLOYEES</u>**

**PRELIMINARY STATEMENT**

This motion presents a narrow issue:  are Defendants entitled to use employee non-disclosure agreements ("NDAs") to require Plaintiffs' counsel to notify defense counsel of a former employee's identity, and, in effect, to secure defense counsel's consent, before interviewing the individual as part of their investigation of this case?  If Defendants' NDAs are construed to require such disclosure and consent, common experience teaches that former employees will refuse to speak, fearing retaliation and allegations of breach of the NDA – thus closing off a significant avenue of informal discovery.

We are, however, mindful, of Defendants' concerns that informal interviews with their former employees might implicate privilege issues and Defendants' legitimate commercial interests.  Those matters, too, are worthy of attention.

This motion, therefore, turns on the most sensible reconciliation of these competing interests.  Contrary to Defendants' exaggerations, Plaintiffs do not seek to "declare[e] void" all

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/BANDSTRA

NDAs, much less do Plaintiffs (or their counsel) seek to use Defendants' confidential information for commercial advantage. *See, e.g.,* Def. Opp. at 1, 3, 12.[1]

As we have set forth in our moving papers, and as we demonstrate further below, the interview guidelines that we have proposed strike an appropriate balance. They will allow Plaintiffs' counsel to conduct informal interviews free from interference, while addressing Defendants' concerns.

First, to deal with Defendants' privilege concerns, the case law establishes that warning the former employee, at the interview's outset, against disclosing privileged communications addresses this matter. *See* Pl. Mem. at 11-13. Interviewing attorneys, as officers of the court, are obliged to assure compliance with that warning. If they do not, they risk serious professional consequences. Defendants do not suggest any facts here that distinguish this case from the many others holding that "privilege non-disclosure warnings" appropriately deal with their concern on this point, which exists whenever informal interviews are conducted. Moreover, we have even proposed an obligation to self-report to defense counsel any unintended or otherwise inadvertent disclosures of privileged information. Himes Aff., Ex. A, ¶ 4(f). Plaintiffs' proposed Guidelines are consistent with Defendants' own authority. *See, e.g., Serrano v. Cintas Corp.*, No. 04-40132, 2009 WL 5171802, at *4-5 (E.D. Mich. Dec. 23, 2009) (court "guidelines" provide for warning to former employee not to disclose confidential or privileged information, but not advanced notice to defendants), *cited in* Def. Opp. at 2.

---

[1] References to "Def. Opp." are to Defendants' Joint Opposition to Direct Purchaser Plaintiffs' Motion for an Order Governing Interviews of Informal Employees, dated May 26, 2011. References to "Pl. Mem." and to "Himes Aff." are to the Memorandum in Support of Direct Purchaser Plaintiffs' Motion for an Order Governing Interviews of Former Employees, dated May 13, 2011, and to the affidavit of Jay L. Himes, sworn to May 13, 2011, respectively.

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/BANDSTRA

Second, to protect commercially sensitive information, interviewing counsel here would be required to treat all information received as Highly Confidential under the Court's existing Protective Order. *See* Stipulated Protective Order, May 20, 2010 (D.E. 180), ¶¶ 3(b), 7. In practical terms, Plaintiffs themselves would not receive information from informal interviews, except potentially in the context of testifying – and even then only if they sign an express promise to honor the Court's Protective Order. *Id.* ¶¶ 6(d), 7.[2] This approach will amply protect Defendants' legitimate commercial interests, particularly taking account of the nature of this litigation.

This is an antitrust price-fixing case. It concerns Defendants' collective decisions on price increases, the timing of those increases, and Defendants' collective decisions to refrain from competing for customers or jobs, or in particular geographic areas. As a result, any interviews we conduct with Defendants' former employees will focus on matters such as this. The risk that this type of information could harm Defendants' legitimate business interests is insubstantial – particularly since Plaintiffs are Defendants' customers, not their competitors. However, even that minimal risk is, as noted, adequately addressed by blanketing all disclosures in the most stringent restrictions imposed by the case Protective Order.

Thus, as we demonstrate below, Plaintiffs' motion should be granted.

## ARGUMENT

## I.   DEFENDANTS' NDAs SHOULD NOT BE CONSTRUED TO REQUIRE ADVANCE DISCLOSURE OF WITNESS IDENTITY.

"In general, no party has exclusive rights to a witness. Counsel is entitled and expected to look for witnesses and interview them. Their interviews constitute the paradigm attorney

---

[2] Briefly, Highly Confidential information here can be used by the parties' counsel and their experts. One side's Highly Confidential information may not be disclosed to the parties on the other side except as needed for testimony under rigorous restrictions. *See* Protective Order ¶¶ 6(d), 7.

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/BANDSTRA

work product." *Patton v. Novartis Consumer Health, Inc.*, No. 4:02-CV-0047-DFH-WGH, 2005 WL 1799509, at *2 (S.D. Ind. July 25, 2005). Florida law reflects the prevailing view throughout the country that informal interviews of former employees are an appropriate part of case investigation. Pl. Mem. at 4-5, 7-8. Defendants themselves concede the point. *See* Def. Opp. at 1. Thus, absent Defendants' NDAs, Plaintiffs' counsel could interview Defendants' former employees without notice or interference.

Defendants, however, seek to use their NDAs to establish a de facto "no contact" rule that the courts have already held cannot be imposed by professional ethics rules. Defendants seek to require notice and a waiting period (a meet and confer process that will likely result in impasses and motions), restrictions that, if adopted, would have the practical effect of precluding access to their former employees. *See* Def. Opp. at 3-4. There will be former employees who are prepared to speak only anonymously, at least in the first instance, and if their anonymity cannot be assured, these individuals will not speak at all.

To justify their advance notice requirement, Defendants argue that they need to be able to assess the information that might be disclosed in an interview on an individualized basis, considered against the particular NDA that each former employee has signed. *See* Def. Opp. at 3-4. Yet Defendants do not deny that their NDAs are drafted so broadly that they could be read to prohibit the disclosure of virtually anything a former employee knows about his former company's business. *See* Pl. Mem. at 11. If Defendants are afforded the ability to use these blanket NDAs to limit interviews, it is unrealistic to believe that they will voluntarily waive the non-disclosure provisions and allow Plaintiffs' counsel to meet with their former employees, alone, to discuss facts relevant to this case. Furthermore, the notion that counsel for a Defendant would construe a particular former employee's NDA to permit disclosure is equally spurious.

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/BANDSTRA

This fundamental reality does not change, depending on the former employee's level in the business hierarchy. For that reason, courts have upheld contacts with former employees who have held managerial positions, as well as staff-level positions. *Serrano*, 2009 WL 5171802, at *4 (providing guidelines for interviewing "former 'decision maker' employees"); *Bryant v. Yorktowne Cabinetry, Inc.*, 538 F. Supp. 2d 948, 953 (W.D. Va. 2008) (permitting interviews of former employees, "including those with managerial responsibilities").

*Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 811 F. Supp. 651 (M.D. Fla. 1992), *aff'd*, 43 F.3d 1439 (11th Cir. 1995), on which Defendants rely, has no application. There, counsel hired a discharged executive, who still had confidential documents, as a "consultant." More simply put, the attorney tried to buy potential evidence – and the Court, unsurprisingly, ordered disqualification. Nothing of the sort is involved here. Moreover *Rentclub* predates the Florida Supreme Court's holding in *H.B.A. Mgmt., Inc. v. Estate of May Schwartz*, 693 So. 2d 541 (Fla. 1997), which upheld interviews with former employees. *See also Bryant*, 535 F. Supp. 2d at 950 (noting that, insofar as *Rentclub* may be read to prohibit contact with former employees generally, the ruling has "met with a substantial degree of disapproval and disagreement").

*Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913 (D. Nev. 2006), is similarly inapplicable. There, the former employee – who had entered an Invention and Secrecy Agreement – offered to sell his services as an expert witness to a company litigating against his former employer, while also disclosing confidential information in the process. The Court enjoined this attempt to sell confidential information to opposing counsel.

The Court in *NAACP v. State of Florida*, 122 F. Supp. 2d 1335, 1340 (M.D. Fla. 2000), appears to have prohibited contact with former employees who were "associated with" the

defendant. The ruling is, we submit, in tension with *H.B.A. Management* as well as outside the mainstream body of law in this area – and thus unpersuasive. *See, e.g., Wagner v. City of Holyoke*, 183 F. Supp. 2d 289, 294 (D. Mass. 2001) (declining to require plaintiffs to identify to defendant the individuals that they intended to contact); *Gianzero v. Wal-Mart Stores, Inc.*, No. 09-cv-00656-REB-BNB, 2011 WL 1740624 (D. Colo. May 5, 2011) (relying, in part, on the Comment to the Colorado Rules of Professional Conduct that is precisely the same as the Comment to Rule 4-4.2 of the Florida Rules of Professional Conduct). In any event, the guideline restrictions that we have proposed – including Highly Confidential treatment of all information learned – are more stringent than those found in *NAACP*.[3]

*Joynes v. NCL America, Inc.*, No. 08-cv-23493, 2010 WL 107733 (S.D. Fla. Jan. 7, 2010), on which Defendants also rely, followed the ruling of the *NAACP* court on contacts with *current*, not former, employees. This is clear from the *Joynes* court's citation to the current employee's section of the *NAACP* decision. *See* 2010 WL 107733 at *1 (citing *NAACP*, 122 F.Supp.2d at 1343-44).

---

[3] *NAACP*'s ruling on former employees could be read more narrowly, however. The Court defined former employee who were "associated with" the defendant as those "who may have been members of management or 'high-level' employees who had access to privileged or confidential communications/information, participated in decision-making activities, and/or worked with the attorneys representing the Department [the government defendant in the case]." *Id.* at 1340 n. 6. Thus, the Court may have sought to identify as off-limits former employees with a significant continuing connection to the defendant. *Compare* American Law Institute, Restatement (Third) Of The Law Governing Lawyers §100 (2010) ("a represented nonclient" – who is subject to a no-contact prohibition – "includes: . . . (2) a current employee or other agent of an organization represented by a lawyer: (a) if the . . . other agent supervises, directs, or regularly consults with the lawyer concerning the matter or if the agent has power to compromise or settle the matter"). In such circumstances, treating the former employee differently is arguably appropriate because the individual's continuing connection with the litigant, frequently related to the subject matter of the litigation itself, in fact survives formal termination of employment relations. Appropriate questions preliminary to any interview could determine whether any such continuing connection exists, thereby obviating any need to prohibit all interviews of former employees.

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/BANDSTRA

## II.     PRIVILEGE CONSIDERATIONS DO NOT WARRANT ADVANCE NOTICE TO DEFENDANTS.

Likewise, privilege considerations do not justify imposing a prior notice and

identification requirement.  This is an antitrust conspiracy action involving anti-competitive

activity, secretly engaged in by purported "competitors."  These conspirators almost certainly

would not have consulted with counsel on their on-going illegal conduct.  If they did, the crime-

fraud exception to the attorney-client privilege would be triggered.  *See, e.g., United States v.

Zolin*, 491 U.S. 554, 563 (1989).  And, while company employees may have contact with their

employers' counsel for various reasons unrelated to the facts of this litigation, by definition those

areas are not likely interview topics at all.

Defendants rely heavily on *G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529

(S.D.N.Y. 2001).  But the facts there were entirely different from this case.  The defendant there

was a law firm and its former employees obviously had "extensive" exposure to privileged

information.  *Id.* at 534.  Moreover, the interviews were to be conducted by lay investigators, not,

as here, by counsel.  *See generally Judd v. Take-Two Interactive Software, Inc.*, No. 07 Civ.

7932(GEL),  2008 WL 906076, at *2 (S.D.N.Y. Apr. 3, 2008) (discussing *G-I Holdings* and

permitting informal interviews because "the Court must assume, until demonstrated otherwise,

that all attorneys before this Court will behave properly as officers of the Court").

Defendants also rely on *Kingsway Fin. Services, Inc. v. PricewaterhouseCoopers LLP*,

No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4200601 (S.D.N.Y. Sept. 12, 2008).  *Kingsway*,

however, was a securities fraud case.  Typically, a company's financial reporting activity

requires frequent contact with counsel to determine the nature and extent of disclosure required

under federal or state securities laws, the SEC's detailed rules and regulations, and the

accounting profession's generally accepted principles and standards – as well as counterpart

provisions governing company operations abroad.  As a result, counsel are often involved in events giving rise to the claims in securities lawsuits.  In this context, the *Kingsway* court adopted a notice requirement before interviews could be held.

By contrast, Defendants' anti-competitive activity here – per se antitrust violations – typically proceeds in secret, without attorney involvement.  As a result, the additional degree of caution that the *Kingsway* court imposed is not warranted here.  Additionally, here, unlike in *Kingsway*, Plaintiffs have proposed specific safeguards against the disclosure of privileged information.

*Hubbard v. Bankatlantic Bancorp, Inc.*, No. 07-61542-CIV, 2009 WL 3856458 (S.D. Fla. Nov. 17, 2009), did not raise any issue regarding notice of a proposed interview.  The court simply directed disclosure of confidential witnesses relied on to draft the operative complaint.  The case here is altogether different.  Defendants' other authorities are similarly distinguishable.[4]

Finally, Defendants may be suggesting, as their fall-back position, that prior notice should be given of the subject matter of proposed interviews, as the Court provided for in *In re JDS Uniphase Securities Litigation*, 238 F. Supp. 2d 1127 (N.D. Cal. 2002).  *See* Def. Opp. at 10-11.  That approach, however, would be inappropriate here.

Like *Kingsway*, *JDS* was a securities fraud case, and the *JDS* court concluded, in the context of that case, that particularizing the questions to be put to witnesses would assist in avoiding inadvertent disclosure of privileged material.  As discussed above, this is a different

---

[4] *See, e.g., Kaiser v. AT&T*, No. CIV 00-724-PHX JWS, 2002 WL 1362054 (D. Ariz. Apr. 5, 2002) (counsel disqualified after engaging in deceptive conduct to conceal contacts with a former employee; based on Arizona law, which prohibited contact with former employees); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 911 F. Supp 148 (D.N.J. 1995) (the parties agreed to prior notice so that the matter was not litigated); *Kishaba v. Hilton Hotels Corp.*, 936 F.2d 578 (9th Cir. 1991) (stating that the district court's decision prohibiting an interview with a former employee did not prejudice plaintiffs' case, but providing no analysis on the decision below).

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/BANDSTRA

kind of case, and, accordingly, the *JDS* approach is unwarranted. As many other courts have held, our proposed guidelines sufficiently address privilege considerations. *See* Pl. Mem. at 11-13.

## CONCLUSION

The purpose of this motion is to facilitate the time-honored – and court-approved – practice of informal and unhindered attorney interviews. It is not, as Defendants needlessly argue, to invalidate all their NDAs for all purposes for all time.

If Defendants can obtain broad NDAs from employees, and then use them in litigation to require advance notice of – and, indeed, consent to – interviews of their former employees, a chilling effect will be inevitable. Employees will decline to come forward with information for fear of violating the NDA or of incurring the adverse consequences that former employers may visit upon them if their names are disclosed. For those few who are willing to run the risks, Defendants will simply use the NDA to decline consent to any informal interview, except on the company's terms or on those that result from litigating the matter before the Court. Employer-imposed NDAs will strangle the very informal interviews that the courts have preserved when attacked under "no-contact" ethical rules.

Our proposed guidelines offer a workable solution. Defendants' guidelines do not. The Court should grant Plaintiffs' motion.


Date: June 7, 2011                        Respectfully submitted,

                                          /s/ Robert C. Josefsberg
                                          Robert C. Josefsberg (Florida Bar No. 040856)
                                          Victor M. Diaz, Jr. (Florida Bar No. 503800)
                                          Katherine W. Ezell (Florida Bar No. 114771)
                                          Alexander Rundlet (Florida Bar No. 692301)
                                          **PODHURST ORSECK, P.A.**
                                          City National Bank Building

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/BANDSTRA

25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: 305.358.2800
Fax: 305.358.2382
rjosefsberg@podhurst.com
vdiaz@podhurst.com
kezell@podhurst.com
arundlet@podhurst.com

*Plaintiffs' Interim Liaison Counsel*

Jay L. Himes
Hollis Salzman (Florida Bar No. 947751)
Gregory S. Asciolla
Seth R. Gassman
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: 212.907.0700
Fax: 212.818.0477
hsalzman@labaton.com
jhimes@labaton.com
gasciolla@labaton.com
sgassman@labaton.com


Michael D. Hausfeld
William P. Butterfield
Brian A. Ratner
Ralph J. Bunche
**HAUSFELD LLP**
1700 K Street, NW
Suite 650
Washington, DC 20006
Telephone: 202.540.7200
Fax: 202.540.7201
mhausfeld@hausfeldllp.com
wbutterfield@hausfeldllp.com
bratner@hausfeldllp.com
rbunche@hausfeldllp.com


William A. Isaacson
Matthew W. Friedrich
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Ave. NW, Suite 800
Washington, DC 20015

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/BANDSTRA

Telephone: 202.237.2727
Fax: 202.237.6131
wisaacson@bsfllp.com
mfriedrich@bsfllp.com

Stephen N. Zack (Florida Bar No. 145215)
Mark J. Heise (Florida Bar No. 771090)
**BOIES, SCHILLER & FLEXNER LLP**
100 SE Second Street, Suite 2800
Miami, FL 33131
Telephone: 305.539.8400
Fax: 305.539.1307
szack@bsfllp.com
mheise@bsfllp.com

*Plaintiffs' Interim Co-Lead Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that copies of the following documents were served on all counsel of record by ECF or electronic mail on June 7, 2011:

- Direct Purchaser Plaintiffs' Reply Memorandum in Further Support of Their Motion for An Order Governing Interviews of Former Employees

Respectfully submitted,

/s/ Katherine W. Ezell
Katherine W. Ezell (Florida Bar No. 114771)
**PODHURST ORSECK, P.A.**
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: 305.358.2800
Fax: 305.358.2382
kezell@podhurst.com

**SERVICE LIST**

IN RE: FLORIDA CEMENT AND CONCRETE ANTITRUST LITIGATION
MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Bandstra

United States District Court – Southern District of Florida – Miami Division

| | |
|---|---|
| **SHEPARD GOLDFEIN, ESQ.**<br>**PAUL M. ECKLES, ESQ.**<br>**CLIFFORD H. ARONSON, ESQ.**<br>**MATTHEW M. MARTINO, ESQ.**<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, New York 10036-6522<br>Telephone: 212-735-3000<br>Facsimile: 212-735-2000<br>Email: Shepard.goldfein@skadden.com<br>Email: paul.eckles@skadden.com<br>Email: clifford.aronson@skadden.com<br>Email: matthew.martino@skadden.com<br><br>**MICHAEL NACHWALTER, ESQ.**<br>**ELIZABETH B. HONKONEN, ESQ.**<br>**JALAINE GARCIA, ESQ.**<br>Kenny Nachwalter, P.A.<br>1100 Miami Center<br>201 South Biscayne Boulevard<br>Miami, FL 33131<br>Telephone: 305-373-1000<br>Facsimile: 305-373-1861<br>Email: mnachwalter@kennynachwalter.com<br>Email: ebh@kennynachwalter.com<br>Email: jgarcia@kennynachwalter.com<br><br>**Counsel for Defendant**<br>**Cemex Corp.** | **RYAN SHORES, ESQ.**<br>Hunton & Williams LLP<br>1900 K Street, NW<br>Washington, D.C.<br>Telephone: 202-955-1500<br>Facsimile: 202-778-2201<br>Email: rshores@hunton.com<br><br>**D. BRUCE HOFFMAN, ESQ.**<br>**MARTY STEINBERG, ESQ.**<br>Hunton & Williams LLP<br>1111 Brickell Avenue, Suite #2500<br>Miami, FL 33131<br>Telephone: 305-810-2500<br>Facsimile: 305-810-2460<br>Email: bhoffman@hunton.com<br>Email: msteinberg@hunton.com<br><br>**Counsel for Defendant**<br>**Florida Rock Industries, Inc.** |

**FRANK G. BURT, ESQ.**
Jorden Burt LLP
1025 Thomas Jefferson Street N.W.
Suite #400 East
Washington, D.C. 20007
Telephone: 202-965-8100
Facsimile: 202-965-8104
Email: fgb@jordenusa.com

**LAURA COFER TAYLOR, ESQ.**
**JAMES L. COOPER, ESQ.**
**RYAN Z. WATTS, ESQ.**
Arnold & Porter LLP
555 12th Street NW
Washington, D.C. 20004
Telephone: 202-942-5000
Facsimile: 202-942-5999
Email: Laura.taylor@aporter.com
Email: James.cooper@aporter.com
Email: Ryan.watts@aporter.com

**RICHARD J. OVELMEN, ESQ.**
Jorden Burt LLP
777 Brickell Avenue, Suite #500
Miami, FL 33131
Telephone: 305-371-2600
Facsimile: 305-372-9928
Email: rjo@jordenusa.com

**Counsel for Defendant**
**Tarmac America LLC**

**RICHARD B. BROSNICK, ESQ.**
Butzel Long, a professional corporation
380 Madison Avenue, 22nd Floor
New York, NY 10017
Telephone: 212-818-1110
Facsimile: 212-818-0494
Email: brosnick@butzel.com

**CHRISTOPHER B. HOPKINS, ESQ.**
Akerman Senterfitt
Esperante Building, 4th Floor
222 Lakeview Avenue, Suite 400
West Palm Beach, FL 33401-6147
Telephone: 561-653-5000
Facsimile: 561-659-6313
Email: christopher.hopkins@akerman.com

**Counsel for Defendant**
**Prestige AB Management Co., LLC**

| | |
|---|---|
| **ARTHUR H. RICE, ESQ.**<br>**JODI N. COHEN, ESQ.**<br>Rice Pugatch Robinson & Schiller, P.A.<br>101 N.E. Third Avenue, Suite 1800<br>Fort Lauderdale, FL 33301<br>Telephone: 954-462-8000<br>Facsimile: 954-462-4300<br>Email: arice.ecf@rprslaw.com<br>Email: jcohen@rprslaw.com<br><br>**Indirect Purchaser Plaintiffs' Interim Co-Lead Class Counsel** | **DAVID E. KOVEL, ESQ.**<br>**KENNETH G. WALSH, ESQ.**<br>**DANIEL HUME, ESQ.**<br>Kirby Mcinerny LLP<br>825 Third Avenue, 16th Floor<br>New York, NY 100022<br>Telephone: 212-371-6600<br>Facsimile: 212-751-2540<br>Email: dkovel@kmllp.com<br>Email: kwalsh@kmllp.com<br>Email: dhume@kmllp.com<br><br>**Indirect Purchaser Plaintiffs' Interim Co-Lead Class Counsel** |
| **HERMAN J. RUSSOMANNO, ESQ.**<br>**HERMAN J. RUSSOMANNO, III, ESQ.**<br>Russomanno & Borrello<br>150 W. Flagler St., Suite 2800<br>Miami, FL 33130-1560<br>Telephone: 305-373-2101<br>Facsimile: 305-373-2103<br>Email: hrussomanno@russomanno.com<br>Email: herman2@russomanno.com<br><br>**Indirect Purchaser Plaintiffs' Liaison Counsel** | |