**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| **IN RE FLORIDA CEMENT AND** )<br>**CONCRETE ANTITRUST LITIGATION** )<br>)<br>)<br>)<br>)<br>) | **MASTER DOCKET NO. 09-23187-**<br>**CIV-ALTONAGA/Bandstra** |

*(DIRECT PURCHASER ACTION)*

| | |
|---|---|
| **IN RE FLORIDA CEMENT AND** )<br>**CONCRETE ANTITRUST LITIGATION** )<br>)<br>)<br>)<br>)<br>) | **MASTER DOCKET NO. 09-23493-**<br>**CIV-ALTONAGA/Bandstra** |

*(INDIRECT PURCHASER ACTION)*

**DEFENDANTS' OMNIBUS MEMORANDUM OF LAW**
**IN OPPOSITION TO DIRECT PURCHASER PLAINTIFFS'**
**MOTION FOR ADDITIONAL DEPOSITIONS [D.E. 349] AND INDIRECT**
**PURCHASER PLAINTIFFS' MOTION FOR ADDITIONAL DEPOSITIONS [D.E. 232]**

# <u>TABLE OF CONTENTS</u>

*Page*

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT...........................................................................................................................5

    A.    Direct/Indirect Purchaser Plaintiffs Have Failed To Comply with the
    Procedures Necessary for Seeking Additional Depositions Under the Local
    Rules of This Court ...........................................................................................5

        1.    Direct/Indirect Purchaser Plaintiffs' Motions Do Not Comply with
        Local Rule 16.1 ..................................................................................5

        2.    Direct/Indirect Purchaser Plaintiffs' Motions Do Not Comply with
        Local Rule 26.1 ..................................................................................6

    B.    Direct/Indirect Purchaser Plaintiffs Have Not Met Their Burden for Leave
    Under Rules 30 and 26 of the Federal Rules of Civil Procedure...........................7

        1.    Direct/Indirect Purchaser Plaintiffs Have Not Made a
        Particularized Showing That the Additional Depositions Are
        Necessary ...........................................................................................8

        2.    Plaintiffs' Proposed Deposition Plans Would Be Cumulative and
        Duplicative ......................................................................................12

        3.    Direct/Indirect Purchaser Plaintiffs Have Had Ample Opportunity
        To Obtain Relevant Information Through Discovery in This Action .......13

        4.    At This Late Stage the Burden and Expense of Plaintiffs' Proposed
        Deposition Plans Outweigh Any Likely Benefit.....................................15

    CONCLUSION................................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**Cases**

*In re Aspartame Antitrust Litigation*, No. 2:06-CV-1732-LDD, 2008 WL 2275531
(E.D. Pa. May 13, 2008)..............................................................................................9

*In re Automobile Refinishing Paint Antitrust Litigation*, No. 1426,
2004 U.S. Dist. LEXIS 29160 (E.D. Pa. Oct. 29, 2004)..............................................9

*B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, No. 01-2410-JAR,
2003 WL 21939019 (D. Kan. July 22, 2003) ..............................................................9

*Barrow v. Greenville Independent School District*, 202 F.R.D. 480 (N.D. Tex. 2001) ..............11

*Bituminous Fire & Marine Insurance Corp. v. Dawson Land Development Co.*,
No. 3:02-CV-793-J-21TEM, 2003 WL 22012201 (M.D. Fla. Feb. 13, 2003).........................8, 9

*In re Intel Corp. Microprocessor Antitrust Litigation*, No. 05-1717-JJF,
2007 WL 137152 (D. Del. Jan. 12, 2007) ..................................................................9

*Mazur v. Lampert*, No. 04-61159-CIV, 2007 WL 676096 (S.D. Fla. Feb. 28, 2007) ..............9, 11

*McDonald v. Glades Electric Co-Op*, No. 2:08-cv-179-FtM-29SPC, 2010 WL 4337906
(M.D. Fla. Oct. 27, 2010) ....................................................................................15

*Royal Bahamian Association, Inc. v. QBE Insurance Corp.*, No. 10-21511-CIV,
2010 WL 3003914 (S.D. Fla. July 29, 2010) ............................................................12

*San Francisco Health Plan v. McKesson Corp.*, 264 F.R.D. 20 (D. Mass. 2010) ................10, 11

*Saperstein v. Palestinian Authority*, No. 04-20225-CIV, 2010 WL 2854146
(S.D. Fla. July 20, 2010) ....................................................................................15

*Schiller America, Inc. v. Welch Allyn, Inc.*, No. 06-21439-CIV, 2007 WL 2702247
(S.D. Fla. Sept. 14, 2007) ..................................................................................11

*Southern Pan Services, Co. v. S.B. Ballard Construction Co.*, No. 3:07-cv-592-J-34TEM,
2008 WL 5210870 (M.D. Fla. Dec. 11, 2008) ..........................................................12

*Tardif ex rel. Yerk v. People for the Ethical Treatment of Animals*,
No. 2:09-cv-537-FtM-29SPC, 2011 WL 2413630 (M.D. Fla. June 13, 2011) ....................12

*United States v. Dentsply International, Inc.*, No. Civ. A. 99-5 MMS, 2000 WL 654286
(D. Del. May 10, 2000) ......................................................................................9

*In re Urethane Antitrust Litigation*, 261 F.R.D. 570 (D. Kan. 2009) ............................9

ii

**Rules**

Fed. R. Civ. P. 26..................................................................................................8

Fed. R. Civ. P. 30..................................................................................................8

S.D. Fla. L.R. 16.1...............................................................................................5

S.D. Fla. L.R. 26.1...............................................................................................6

S.D. Fla. L.R. App. A............................................................................................8

**Other Authority**

Manual for Complex Litigation § 11.451 (4th ed. 2004).........................................11

Defendants Cemex, Inc., Florida Rock Industries, Inc., VCNA Prestige Ready-Mix Florida, Inc. and Tarmac America LLC hereby submit this memorandum of law in opposition to the Motions for Additional Depositions filed by Direct Purchaser Plaintiffs on November 22, 2011, and Indirect Purchaser Plaintiffs on November 30, 2011.  [D.E. 349 in Master Docket 09-23187]; [D.E. 232 in Master Docket 09-23493].  Direct and Indirect Purchaser Plaintiffs seek an unspecified number of depositions beyond those for which Rule 30 of the Federal Rules of Civil Procedure provides.  These requests not only are untimely but also fail to meet the standards necessary for such relief.

## PRELIMINARY STATEMENT

After reviewing the submissions from Direct and Indirect Purchaser Plaintiffs, it is difficult even to determine just how many depositions either or both Plaintiff groups actually are seeking.  Only one thing is clear:  Both Direct and Indirect Purchaser Plaintiffs are poised to exceed the number of depositions permitted under Rule 30 even *without* approval from this Court.

### *Direct Purchaser Plaintiffs' Request for Additional Depositions*

While Direct Purchaser Plaintiffs repeatedly state that they are seeking leave from this Court to conduct thirty-eight fact depositions, *see, e.g.*, Direct Br., [D.E. 350 in Master Docket 09-23187], at 4, this number is illusory.  As an initial matter, Plaintiffs specifically reference at least thirty-nine depositions:  four depositions of the Defendants under Rule 30(b)(6); *twenty-nine* depositions of Defendants' current and former employees; and six depositions of "other participants in the Florida concrete industry."  *See, e.g.*, Direct Br. at 1-2.[1]

---

[1] The numbering in "Direct Purchaser Plaintiffs' Proposed Deposition Plan" is inaccurate; "23" appears twice, and the total should be 39 not "38."  *See* [D.E. 350-4 in Master Docket 09-23187], Ex. B at 4-5.

More troubling, however, are the proposed depositions that Direct Purchaser Plaintiffs do not include in this number, which could be *limitless*. Direct Purchaser Plaintiffs fail to account for the fact that they have requested depositions of the nine declarants whose testimony was cited in Defendants' Joint Opposition to Direct Purchaser Plaintiffs' Motion for Class Certification. *See* Jt. Opp. App. Exs. 1-9 (filed under seal on Nov. 15, 2011); Second Declaration of Paul M. Eckles ("Eckles Decl.," filed concurrently herewith) ¶ 8; Direct Br. at 4 n.2.[2] Direct Purchaser Plaintiffs also maintain that they may "need to depose additional former employees" (without any proposed limit) and state further that "[a]t this time" they "do not anticipate needing" third-party depositions beyond the six mentioned above (again with no hint as to how many of these depositions they may request at a later date). *See* Direct Br. at 6.

### Indirect Purchaser Plaintiffs' Request for Additional Depositions

Similarly, Indirect Purchaser Plaintiffs' refrain asks for leave to conduct *forty-two* depositions – most in accordance with the Direct Purchaser Plaintiffs' request. Specifically, Indirect Purchaser Plaintiffs appear to request the same thirty-three depositions of Defendants (under Rule 30(b)(6)) and their current and former employees mentioned above. *See* Indirect Br., [D.E. 232 in Master Docket 09-23493], at 1; *see also* "Indirect Purchaser Plaintiffs' Proposed Deposition Plan," [D.E. 232-1 in Master Docket 09-23493], Ex. A.[3] Indirect Purchaser Plaintiffs,

---

[2] Direct Purchaser Plaintiffs plan to take these *nine* depositions next week – between December 6 and December 9 – even though doing so would exceed the presumptive limit of depositions allowed under Rule 30 in the Direct Purchaser Action and presumably even before the Court has ruled on their request for relief. *See* Eckles Decl. ¶ 8.

[3] The numbering in Indirect Purchaser Plaintiffs' Proposed Deposition Plan should be ignored because it does not accord with the request for relief articulated in their moving brief ("26" as contrasted with forty-two proposed depositions). For instance, entries "17" through "24" each refer to one or *two* proposed depositions and should be numbered "17" through "32". *See* [D.E. 232-1 in Master Docket 09-23493], Ex. A at 4-5.

however, seek to depose at least another *nine* third parties (three more than Direct Purchaser

Plaintiffs' request), only one of whom ("Mike Zaruba") is identified by name.[4]

But this does not tell the whole story with respect to Indirect Purchaser Plaintiffs' request.

Significantly, Defendants were *unaware* of any proposed deposition of Mike Zaruba before

Indirect Purchaser Plaintiffs filed their moving brief; Defendants *never* were served with the

purported subpoena and will respond in due course after Indirect Purchaser Plaintiffs properly

effect service.  *See* Eckles Decl. ¶ 10.  In addition, Indirect Purchaser Plaintiffs nowhere even

refer to the four third-party depositions *they already have taken*.  *See* Eckles Decl. ¶ 5.[5]  Further,

on November 29, Indirect Purchaser Plaintiffs served on each Defendant an additional notice for

deposition under Rule 30(b)(6) relating to the "collection of pricing information for ready-mix

concrete sold 'downstream[,]' i.e. by its customers."  *See* Eckles Decl. ¶ 9; *see, e.g.*, Notice of

Rule 30(b)(6) Deposition of Cemex Corp., Eckles Decl. Ex. A.  These depositions are mentioned

neither in Indirect Purchaser Plaintiffs' moving brief nor in their Proposed Deposition Plan.

Sufficed to say that should the depositions go forward the Indirect Purchaser Plaintiffs will have

conducted *nine* (or even *ten*, if one includes the proposed deposition of Mike Zaruba) of the ten

---

[4] Indirect Purchaser Plaintiffs' counting here is again confusing – their moving brief sometimes refers to "ten third-party depositions," in addition to the (one) proposed deposition of Mike Zaruba.  *See* Indirect Br. at 6.  This number appears to include (a) two depositions of Defendants' former employees and (b) eight depositions of "other" third parties.  *See* [D.E. 232-1 in Master Docket 09-23493], Ex. A at 5.

[5] Direct Purchaser Plaintiffs explicitly *excluded* from their proposed limit any and all "third-party depositions taken solely by Indirect Purchaser Plaintiffs," of which there already have been four (as stated above).  *See* Direct Br. at 2.  But Direct Purchaser Plaintiffs seem to indicate that their Motion likewise seeks relief on behalf of the Indirect Purchaser Plaintiffs, who in addition would "file a separate motion concerning third-party depositions they wish to take."  *See* Direct Br. at 2 n.1 ("Direct Purchaser Plaintiffs' Counsel have met and conferred with Indirect Purchaser Plaintiffs concerning this motion. Indirect Purchaser Plaintiffs support this motion.").  Over a week later, Indirect Purchaser Plaintiffs filed their own Motion seeking additional depositions, largely duplicating the submission and request from Direct Purchaser Plaintiffs, but also seeking more third-party depositions (as described above).

depositions permitted under Rule 30 in the Indirect Purchaser Action – potentially all before this Court has ruled on their request for relief.

Moreover, like the Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs refer to what could be an *unlimited* number of depositions on top of those discussed above.  Indirect Purchaser Plaintiffs indicate that they may "need to depose additional former employees" and state further that they "also need to depose *other* third parties" specific to the Indirect Purchaser Action (both without any proposed limit).  *See* Indirect Br. at 6 (emphasis added).

### *Defendants' Compromise Offer on an Appropriate Number of Additional Depositions*

More than a month ago, Defendants offered Direct and Indirect Purchaser Plaintiffs a total of twenty-six depositions – thirteen in each case, with no more than five total depositions of any one Defendant's current employees.  *See* Eckles Decl. ¶ 2; [D.E. 350-1 in Master Docket 09-23187], Ex. A (Gassman Decl.), Ex. 1.[6]  Direct and Indirect Purchaser Plaintiffs (together, "Direct/Indirect Purchaser Plaintiffs" or "Plaintiffs") now seek between at least another thirteen to sixteen depositions over the twenty-six offered by Defendants – in sum, more than twice the number for which Rule 30 provides (if not an unspecified number more) – and eleven depositions of employees from Defendant Prestige alone.  Absent a stipulation among the parties, the case law nowhere supports such a drastic increase from the number of depositions allowed under Rule 30, particularly where (as here) the parties requesting relief file out of time and cannot satisfy their burden under the applicable rules.

---

[6] While Direct Purchaser Plaintiffs state that their request for relief would "include all non-expert depositions taken by Direct Purchaser Plaintiffs, either alone *or in conjunction with* Indirect Purchaser Plaintiffs" – i.e., the total number of Plaintiff depositions for *both* actions – Direct Purchaser Plaintiffs nowhere allude to the fact that each Plaintiff group would be allowed up to ten depositions under Rule 30. *See* Direct Br. at 1-2 (emphasis added).  In their compromise offer, as described above, Defendants offered thirteen depositions in each case.

## ARGUMENT

**A.      Direct/Indirect Purchaser Plaintiffs Have Failed To Comply with the Procedures Necessary for Seeking Additional Depositions Under the Local Rules of This Court**

        1.      Direct/Indirect Purchaser Plaintiffs' Motions Do Not Comply with Local Rule 16.1

Rule 16.1 of the Local Rules of the United States District Court for the Southern District of Florida governs pretrial procedures in civil actions.  This Rule requires the parties to file at the outset of each case a Joint Proposed Scheduling Report and Order.  This Joint Proposed Scheduling Order "*shall* contain . . . [any] need for rule variations, *such as on deposition length or number of depositions*."  S.D. Fla. L.R. 16.1(b)(3)(G) (emphasis added); *see also* S.D. Fla. L.R. 16.1 cmt. (1998) (stating that Local Rule 16.1 was "modified to make clear that the Joint Proposed Scheduling Order should contain any joint or *unilateral requests* to exceed deposition limitations in length and number" (emphasis added)).

In this case, Direct/Indirect Purchaser Plaintiffs and Defendants filed the relevant Joint Proposed Scheduling Order almost a year ago in January 2011.  Direct/Indirect Purchaser Plaintiffs, however, did not include any unilateral request to exceed the limitation on the number of depositions or otherwise preserve the issue with the Court.  *See* [D.E. 250, 250-1 in Master Docket 09-23187]; *see also* [D.E. 147, 147-1 in Master Docket 09-23493].  This failure is particularly striking given that the first iteration of the parties' Joint Proposed Scheduling Order, filed a year earlier in *January 2010*, provided that the parties would meet and confer from March to June 2010 "regarding . . . the appropriate number of depositions."  *See* [D.E. 114, 114-1 in Master Docket 09-23187], Ex. A at 2.

Significantly, Direct/Indirect Purchaser Plaintiffs and Defendants spent a great deal of time in January 2011 negotiating with respect to the appropriate number of depositions, and the

Proposed Order provided that the parties would continue to "meet and confer about remaining issues necessary to *begin* discovery" until February 2, 2011. *See* Eckles Decl. ¶ 3; [D.E. 250, 250-1 in Master Docket 09-23187], Ex. A at 2 (emphasis added). The parties were unable at that time to reach an agreement regarding Direct/Indirect Purchaser Plaintiffs' request to increase the allowable number of depositions, yet Plaintiffs waited almost another ten months – and now less than three months before fact discovery closes on February 17, 2012 – before seeking relief from the Court. *See* Eckles Decl. ¶ 3; [D.E. 251 in Master Docket 09-23187] at 3. Direct/Indirect Purchaser Plaintiffs cannot explain this unreasonable and impermissible delay, and their Motions should be denied on this basis alone.

2.     Direct/Indirect Purchaser Plaintiffs' Motions Do Not Comply with Local Rule 26.1

Likewise, Direct/Indirect Purchaser Plaintiffs have failed to comply with Local Rule 26.1, which provides that "[a]ll motions related to discovery . . . shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought." *See* S.D. Fla. L.R. 26.1(h)(1). After failing to reach agreement in January 2011 on an increase of the number of permissible depositions, Direct/Indirect Purchaser Plaintiffs knew in February 2011 that they would need relief from the limit set forth in Rule 30. *See* Eckles Decl. ¶ 3. But, rather than seek relief from the Court at that time, Direct/Indirect Purchaser Plaintiffs proceeded at their own risk and took no action until the balance of the time for fact discovery had passed. *See* [D.E. 251 in Master Docket 09-23187] at 1 ("February 2, 2011: Fact discovery opens."). This was inexcusable delay.

Even ignoring the facts that the parties had negotiated and failed to agree on an appropriate deposition limit in 2010 and again in early 2011 before fact discovery had opened,

and accepting Direct/Indirect Purchaser Plaintiffs' construct that the (renewed) meet-and-confer process between the parties on this issue ended in "mid-October 2011," Plaintiffs' requests for relief *still* were not timely filed within thirty days of the (latest) triggering event on October 19, 2011.  *See* Direct Br. at 3-4; Gassman Decl. Ex. 1 (10/19/11 e-mail from Paul M. Eckles to Seth R. Gassman et al.); *see also* Indirect Br. at 3-4.  Tellingly, under Direct/Indirect Purchaser Plaintiffs' own version of the facts, these negotiations began at the earliest in "late September": *eight* months into fact discovery and after Plaintiffs had taken *four* depositions under Rule 30(b)(6) in mid-September.  *See* Direct Br. at 3; Gassman Decl. Ex. 1 (09/26/11 e-mail from Seth R. Gassman to Paul M. Eckles and Matthew Martino).  Direct/Indirect Purchaser Plaintiffs have made no showing of any cause for their late filings, which contravene both Local Rule 16.1 and Local Rule 26.1, and thus have waived any request for additional depositions.[7]

### B.   Direct/Indirect Purchaser Plaintiffs Have Not Met Their Burden for Leave Under Rules 30 and 26 of the Federal Rules of Civil Procedure

Notwithstanding Direct/Indirect Purchaser Plaintiffs' dispositive failure to comply with the relevant Local Rules, their Motions also do not meet the applicable standards under the Federal Rules of Civil Procedure.  Rule 30 requires that in order to take a deposition plaintiffs "must obtain leave of court . . . if the parties have not stipulated to the deposition" and if it "would result in more than 10 depositions being taken under this rule or Rule 31 by the

---

[7] Plaintiffs' own filings admit that they had planned to file these Motions for some time before November 22. For example, as Indirect Purchaser Plaintiffs admit, the deposition of Michael Lane occurred on November 1-2, and the deposition of Brian Mahoney on November 18. *See* Indirect Br. at 1; *see also* Eckles Decl. ¶¶ 6-7. But Plaintiffs' Proposed Deposition Plans list the status of both depositions as "Scheduled." *See* [D.E. 350-4 in Master Docket 09-23187], Ex. B at 3; [D.E. 232-1 in Master Docket 09-23493], Ex. A at 3. In fact, the date for the Lane deposition had been scheduled back on September 23, and the date for the Mahoney deposition back on October 12. Eckles Decl. ¶¶ 6-7. Further, Plaintiffs refer to currency conversions which, while irrelevant to the requested relief (as discussed below), were performed on November 15 – a week before Direct Purchaser Plaintiffs, and two weeks before Indirect Purchaser Plaintiffs, actually filed their Motion. *See* Direct Br. at 11 n.5; Indirect Br. at 12 n.3.

plaintiffs."  Fed. R. Civ. P. 30(a)(2); *see* S.D. Fla. L.R. App. A.II.A(4) at 90 ("Under Federal

Rule of Civil Procedure 30(a)(2)(A), absent written stipulation of the parties or leave of Court,

the number of depositions being taken by each party is limited to ten (10).").  Under Rule

30(a)(2), relief from this limitation can be granted only "to the extent consistent with Rule

26(b)(2)," which provides that leave may be permitted by court order.  *See id.*; Fed. R. Civ.

P. 26(b)(2)(A).  However, Rule 26(b)(2) also provides that a court "*must limit the frequency or

extent of discovery* otherwise allowed" if:

> (i) the discovery sought is unreasonably cumulative or duplicative . . . ; (ii) the
> party seeking discovery has had ample opportunity to obtain the information by
> discovery in the action; or (iii) the burden or expense of the proposed discovery
> outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).  This standard is both permissive and mandatory –

i.e., a court *may* grant leave for additional depositions over the presumptive limit of ten, *but

cannot do so* if any one of the Rule 26(b)(2)(C) prohibitions applies.  Thus, to the extent the

Court finds *either* that any such additional deposition would be cumulative or duplicative, *or* that

Direct/Indirect Purchaser Plaintiffs have had ample opportunity to discover relevant information,

*or* that the burden or expense of any such deposition outweighs its benefit, then Plaintiffs'

Motions *must* be denied – in whole or in part.[8]

### 1.    Direct/Indirect Purchaser Plaintiffs Have Not Made a Particularized Showing That the Additional Depositions Are Necessary

A "party seeking to exceed the presumptive number of depositions must make a

'particularized showing of why the discovery is *necessary*.'"  *Bituminous Fire & Marine Ins.*

---

[8] At the same time, even if the Court finds that none of these three considerations requires the prohibition
of additional depositions, any such relief *still* would not be mandatory under Rules 30 and 26.  The Court
in its discretion nevertheless may deny the requested relief – e.g., if the requesting party has failed to
comply with the applicable Local Rules.

8

*Corp. v. Dawson Land Dev. Co.*, No. 3:02-CV-793-J-21TEM, 2003 WL 22012201, at *1 (M.D. Fla. Feb. 13, 2003) (collecting cases) (emphasis added and citation omitted).  Further, the "assertion that a case is 'complex' is insufficient to justify deviation from the presumptive number of depositions."  *Id.*; *see Mazur v. Lampert*, No. 04-61159-CIV, 2007 WL 676096, at *2 (S.D. Fla. Feb. 28, 2007) ("[T]he fact that this case involves a complex securities fraud action does not, by itself, require that the parties be given a slew of additional depositions as contemplated in the Motion.").[9]

Far from demonstrating with particularity that additional depositions are necessary, Direct/Indirect Purchaser Plaintiffs instead recycle stale, conclusory assertions that could fit a discovery motion filed in any antitrust lawsuit.  *See, e.g.*, Direct Br. at 6 ("Depositions will be an integral part of discovery in this case.  By their very nature, antitrust suits target conduct that is covert and information that is often compartmentalized."); *id.* at 10 ("Among other methods of discovery, depositions are uniquely suited to uncover proof of antitrust conspiracies."); Indirect Br. at 8 ("Plaintiffs' request for additional depositions should be assessed in light of the remedial goals of the Federal antitrust laws . . . .").  Indeed, now almost ten months into fact discovery, Direct/Indirect Purchaser Plaintiffs rely on little more than allegations from the Complaints in an empty attempt to make this showing.  *See, e.g.*, Direct Br. at 10 (stating that Complaint "outlines

---

[9] Nor are Direct/Indirect Purchaser Plaintiffs' references to "broad" discovery under Rule 26 of any moment on these Motions.  *See* Direct Br. at 8-9 & n.3 (citing cases); Indirect Br. at 8-9 & n.1 (citing same cases).  Significantly, Direct/Indirect Purchaser Plaintiffs rely on a series of cases wholly unrelated to motions seeking additional depositions under Rules 30 and 26; instead, these cases relate to *document requests* seeking documents from foreign jurisdictions.  *See In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 572 (D. Kan. 2009); *In re Auto. Refinishing Paint Antitrust Litig.*, No. 1426, 2004 U.S. Dist. LEXIS 29160, at *8 (E.D. Pa. Oct. 29, 2004); *United States v. Dentsply Int'l, Inc.*, No. Civ. A. 99-5 MMS, 2000 WL 654286, at *5 (D. Del. May 10, 2000); *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732-LDD, 2008 WL 2275531, at *2 (E.D. Pa. May 13, 2008); *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, No. 01-2410-JAR, 2003 WL 21939019, at *3 (D. Kan. July 22, 2003); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717-JJF, 2007 WL 137152, at *5 (D. Del. Jan. 12, 2007).

a conspiracy"); Indirect Br. at 11 (same); Direct Purchaser Plaintiffs' Proposed Deposition Plan, [D.E. 350-4 in Master Docket 09-23187], Ex. B at 1-3.[10]  Plaintiffs' fallback argument that this case is "'unusually complex'" is insufficient.  *See* Direct Br. at 3 (citation omitted) (noting that case was assigned to the "'Complex Track'" under Local Rule); *id.* at 8 ("In complex cases such as this one . . . ."); *see also* Indirect Br. at 2 ("This is a complex antitrust lawsuit . . . .").

Plaintiffs' Proposed Deposition Plans fall woefully short of this required, particularized showing.  The very suggestion that Direct/Indirect Purchaser Plaintiffs seek to depose "a small sample of Defendants' sales representatives and managers" belies any notion of a particularized showing, let alone the assertion that any one such deposition would be *necessary* to Plaintiffs. *See* Direct Br. at 10; Indirect Br. at 7 (asking for "sampling of each Defendant's employees"); *see also S.F. Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010) (noting that in "absence of an agreement between the parties, to secure leave to depose more than ten persons in a case, the party seeking the additional depositions *must specify who is to be deposed and the reasons why their testimony is necessary*." (emphasis added)).  Indeed, Direct/Indirect Purchaser Plaintiffs' citation to the Manual for Complex Litigation at best demonstrates a misunderstanding of the applicable section.  Rather than suggesting that the Court may allow requests for "categories of deponents," *see* Direct Br. at 9; Indirect Br. 9-10, the Manual instead states that the Court "has broad authority *to limit depositions*" and "always has final authority under Rule

---

[10] The "Justification[s] for Deposition[s]" in Direct Purchaser Plaintiffs' Proposed Deposition Plan are limited to citations to their Complaint, *e.g.*, Ex. B at 1-3, baseless conclusions, *e.g.*, *id.* at 4 ("[T]here are numerous other potential [deponents] who may possess relevant information about the operation of the conspiracy."), assertions relating to ordinary business conduct, *e.g.*, *id.* at 2 ("[Florida Rock] employee also determined the price ranges that sales representatives were to quote customers and had to approve each quote."), and suppositions that are totally irrelevant in this case, *e.g.*, *id.* at 4 ("[Cemex employee] also threatened to ship cement to Greece in retaliation for Tarmac competing against Cemex in Panama."). Indirect Purchaser Plaintiffs' Proposed Deposition Plan provides even less "justification."  *See* [D.E. 232-1 in Master Docket 09-23493], Ex. A.

26(b)(2) *to limit the number* and length of depositions," Manual for Complex Litigation § 11.451 (4th ed. 2004) (emphasis added) (noting that in "exercising its authority to limit depositions" court can "consider[ ] each particular deposition, *categories of depositions*, or only the *deposition program as a whole*" in manner that is "sufficient to establish meaningful control over the time and resources to be expended" (emphasis added)).

Beyond a rote listing of conclusory assertions, Direct/Indirect Purchaser Plaintiffs offer scant justification for these depositions of unspecified Defendant employees, at least *sixteen* of which both Plaintiff groups have requested. *See, e.g.*, Direct Purchaser Plaintiffs' Proposed Deposition Plan, [D.E. 350-4 in Master Docket 09-23187], Ex. B at 4-5 (seeking eight depositions of "numerous other potential managers and executives who may possess relevant information" and eight depositions of "[l]ocal sales representatives familiar with Defendant's operation"); Indirect Purchaser Plaintiffs' Proposed Deposition Plan, [D.E. 232-1 in Master Docket 09-23493], Ex. A at 4-5.  With respect to the proposed six to nine depositions of other third parties, Direct/Indirect Purchaser Plaintiffs supposed showing is no more particularized, and no less conclusory.  *See, e.g.*, Direct Purchaser Plaintiffs' Proposed Deposition Plan, [D.E. 350-4 in Master Docket 09-23187], Ex. B at 5 ("Third parties with knowledge about Defendants' [alleged] antitrust conspiracy.").  Absent the requisite showing, this Court should not allow any depositions beyond the presumptive limit.  *See S.F. Health*, 264 F.R.D. at 21 (finding that "courts should not freely grant relief from the limits without a showing of necessity").[11]

---

[11] Significantly, a "party seeking more than ten depositions in a case must justify the necessity of each deposition *previously taken* without leave of court."  *Mazur*, 2007 WL 676096, at *1 (citing *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 482 (N.D. Tex. 2001)); *see also Schiller Am., Inc. v. Welch Allyn, Inc.*, No. 06-21439-CIV, 2007 WL 2702247, at *1 (S.D. Fla. Sept. 14, 2007).  This rule prevents the possibility that a "party could indirectly circumvent the cap on depositions by exhausting the maximum allotted number to take those that she could not justify under the Rule 26(b)(2) standards, and then seeking leave to exceed the limit in order to take depositions that she could substantiate."  *Barrow*,

*(cont'd)*

2.     Plaintiffs' Proposed Deposition Plans Would Be Cumulative and
       Duplicative

Direct/Indirect Purchaser Plaintiffs have requested a minimum of between thirty-nine and

forty-two depositions with no maximum limit on the number of depositions they may seek to

take.  As a threshold matter, neither Direct nor Indirect Purchaser Plaintiffs cite any authority

supporting such an extensive deviation from the limits imposed in Rule 30.  Courts in the

Eleventh Circuit typically have permitted only a limited number of additional depositions when

faced with requests for such relief.  *See Tardif ex rel. Yerk v. People for the Ethical Treatment of

Animals*, No. 2:09-cv-537-FtM-29SPC, 2011 WL 2413630, at *1 (M.D. Fla. June 13, 2011)

(granting one additional deposition); *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, No.

10-21511-CIV, 2010 WL 3003914, at *2 (S.D. Fla. July 29, 2010) (allowing 5 additional

depositions in complex case that included 164 third-party property owners and 6 experts); *S. Pan

Servs., Co. v. S.B. Ballard Constr. Co.*, No. 3:07-cv-592-J-34TEM, 2008 WL 5210870, at *1

(M.D. Fla. Dec. 11, 2008) (granting six additional depositions "due to the complexity of the case,

the potential for a large number of witnesses, and the unavailability of certain documents").

Nor would any such allowance beyond the presumptive limit be appropriate in this case.

The Stipulation Regarding Discovery Protocols attached to the parties' January 2011 Joint

Proposed Scheduling Report and Order noted that the parties had agreed to a list of priority

custodians for Defendants' production of documents.  *See* [D.E. 250, 250-1 in Master Docket

09-23187], Ex. A at 2.  Direct/Indirect Purchaser Plaintiffs now seek a number of depositions

_____
*(cont'd from previous page)*
202 F.R.D. 480, 483.  Direct and Indirect Purchaser Plaintiffs are required to make the particularized
showing that each deposition – previously taken and proposed – is necessary, and should not be given
carte blanche to depose unspecified Defendant employees or third parties.  While Direct/Indirect
Purchaser Plaintiffs admit that it would be difficult just to schedule all of these proposed depositions in
the three months remaining for discovery, at the very least "periodic motions seeking leave for additional
depositions [may be] required" in this case.  *See* Direct Br. at 9; Indirect Br. at 10.

12

(thirty-nine or forty-two, if not more) *greater than* the total number of Defendants' document custodians (thirty-seven).  *See* Eckles Decl. ¶ 4.

Indeed, Direct/Indirect Purchaser Plaintiffs do not even differentiate among any Defendant employees other than to divide them into the broad categories of "senior executives," "managers," "sales representatives," and former employees."  *See* Direct Br. at 4-5; Indirect Br. at 4-6.  While each of the Defendants may have "dozens of managers and sales representatives," this in no way justifies the deposition of "1-2 of each Defendant's employees in each category." *See* Direct Br. at 10; Indirect Br. at 11.  Direct/Indirect Purchaser Plaintiffs give no particularized indication as to why Plaintiffs would need one deponent (let alone two) from *each* category from *each* Defendant.  As such, the Court should reject Direct/Indirect Purchaser Plaintiffs' attempt to harass and increase expenses for the Defendants through unjustified and redundant depositions.

> 3.    Direct/Indirect Purchaser Plaintiffs Have Had Ample Opportunity To
>         Obtain Relevant Information Through Discovery in This Action

Direct/Indirect Purchaser Plaintiffs assert that the additional depositions they have requested would "afford [them] a reasonable opportunity to obtain critical information," and that "Plaintiffs will best be able to develop information concerning this [alleged] conspiracy by taking the depositions of its [supposed] participants."  *See* Direct Br. at 10; Indirect Br. at 11. This is not the standard.  Again, such conclusory and speculative allegations could be made in any antitrust conspiracy lawsuit.  Rather than asking whether additional depositions would allow Direct/Indirect Purchaser Plaintiffs to discover facts (as extra depositions would in every case), Rules 30 and 26 ask whether Plaintiffs otherwise have had the opportunity to discover relevant information.

In this case, Direct/Indirect Purchaser Plaintiffs clearly have had ample time and opportunity to do so.  First, as discussed above, discovery in this case has been ongoing for

nearly ten months and will close in less than three months.  Illustratively, Defendants substantially completed their document productions more than five months ago, yet Direct/Indirect Purchaser Plaintiffs fail even to identify which of the specific document custodians they seek to depose or whether they even intend to do so.  Second, Direct and Indirect Purchaser Plaintiffs combined have conducted to date just ten total depositions and now seek to conduct at least another *thirty-two* more in the short timeframe remaining.  Third, Plaintiffs are at best incorrect in suggesting that "many of Defendants' former employees are subject to restrictive non-disclosure agreements that may limit their ability to speak with Plaintiffs outside of a deposition or hearing."  *See* Direct Br. at 5; Indirect Br. at 5.  More than five months ago, in June 2011, this Court ordered that Plaintiffs would be allowed to interview these former employees and that any such "[c]onfidentiality or non-disclosure agreements or provisions previously entered into between such former employees and their former employers are not breached by, and do not bar, such interviews as may be conducted" by Plaintiffs.  *See* Order, [D.E. 291 in Master Docket 09-23187], at 2-3 (adopting Direct Purchaser Plaintiffs' proposed guidelines for interviews of former employees); [D.E. 278-1 in Master Docket 09-23187] at 1.  The fact that Direct and Indirect Purchaser Plaintiffs have not reviewed these documents, nor taken more than a handful of depositions, nor conducted such informal interviews of Defendants' former employees hardly means that they have not had the opportunity to do so.

Tellingly, after nearly ten months of discovery, Direct/Indirect Purchaser Plaintiffs can point to no specific *facts* to make the particularized showing that any additional depositions would be necessary.  Direct/Indirect Purchaser Plaintiffs' dilatoriness during discovery – and the dearth of facts probative of any conspiracy – does not change the reality that they have had the opportunity to gather relevant information formally through document and written discovery *and*

the depositions already permitted under the Federal Rules, and informally through interviews or otherwise.

> 4.      At This Late Stage the Burden and Expense of Plaintiffs' Proposed
>         <u>Deposition Plans Outweigh Any Likely Benefit</u>

As discussed above, Direct/Indirect Purchaser Plaintiffs have offered nothing but speculation and baseless conclusions relating to the "likely benefit" (if any) of their Proposed Deposition Plans.  But, the burden on the parties at this stage in the litigation could be overwhelming.  While Direct/Indirect Purchaser Plaintiffs state that their requests would not affect the discovery schedule in this case, they seem to recognize that – practically speaking – scheduling and conducting thirty-two or more depositions in less than three months would be difficult.  *See* Direct Br. at 9, 12; Indirect Br. at 12.

This number is particularly remarkable given the fact (discussed above) that Direct and Indirect Purchaser Plaintiffs combined have conducted just ten depositions over nearly *ten* months of discovery.  Courts typically deny requests for additional depositions when a plaintiff has caused undue delay or confusion, for example, by seeking additional depositions near the close of fact discovery.  *See, e.g.*, *McDonald v. Glades Elec. Co-Op*, No. 2:08-cv-179-FtM-29SPC, 2010 WL 4337906 (M.D. Fla. Oct. 27, 2010) (allowing slight extension of discovery but denying request for additional depositions because plaintiffs had caused undue delay and confusion); *Saperstein v. Palestinian Auth.*, No. 04-20225-CIV, 2010 WL 2854146 (S.D. Fla. July 20, 2010) (denying request for additional depositions that would have been scheduled beyond timeframe set in court's scheduling order).

Moreover, the suggestion that this burden somehow would be mitigated because "Defendants are members of large international conglomerates with billions of dollars in annual sales" is disingenuous.  *See* Direct Br. at 11; Indirect Br. at 12.  As an initial matter,

Direct/Indirect Purchaser Plaintiffs falsely equate *sales* figures with *profitability*.  *See* Direct Br. at 11; Indirect Br. at 12.  In fact, each of the Defendants sustained significant financial losses in Florida throughout the relevant time period and continue to do so.  *See* Defs' Jt. Opp. to Direct Purchaser Pls' Mot. for Class Cert. at 4-5 (filed under seal on Nov. 15, 2011).

More fundamentally, sales figures for the Defendants' corporate parents are completely irrelevant to the prospective burden these depositions would have on the Defendants:  these figures include not only sales by subsidiaries other than Defendants, but also sales of products other than ready mix concrete, and sales in states other than Florida and in countries other than the United States.  *See* [D.E. 350-2 to -3 in Master Docket 09-23187], Gassman Decl. Exs. 2-5; *see also* Declaration of Kenneth G. Walsh, [D.E. 232-2 in Master Docket 09-23493] (attaching Gassman Declaration and exhibits thereto as Exhibit A and reattaching the same exhibits submitted with the Gassman Declaration as Exhibit B).  Again, the worldwide sales of the Defendants' corporate parents in no way excuses Direct/Indirect Purchaser Plaintiffs' delay in failing both to conduct adequate discovery in the allotted time period and to seek relief requesting additional depositions at the appropriate time.  Nor can a red herring relating to the Defendants' corporate parents counterbalance the burden on the parties that would result from allowing close to twice the presumptive limit of depositions on the basis of requests filed after the better part of time for fact discovery already has elapsed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the

Motions for Additional Depositions filed by Direct and Indirect Purchaser Plaintiffs, and instead

order the following:

1. In addition to the nine (9) declarant depositions that the Direct Purchaser Plaintiffs plan to conduct next week, Direct Purchaser Plaintiffs shall be allowed thirteen (13) total depositions, inclusive of the six (6) depositions Direct Purchaser Plaintiffs already have taken;

2. Indirect Purchaser Plaintiffs shall be allowed thirteen (13) total depositions, inclusive of the four (4) depositions Indirect Purchaser Plaintiffs already have taken;

3. Direct and Indirect Purchaser Plaintiffs, either alone or in coordination with each other, shall conduct no more than five (5) total depositions of any one Defendant's current and former employees.

Dated:  December 1, 2011                                    Respectfully submitted,


                                                           */s/ Shepard Goldfein*                          
                                                           Shepard Goldfein
                                                           Clifford H. Aronson
                                                           Paul M. Eckles
                                                           Matthew M. Martino
                                                           **SKADDEN, ARPS, SLATE, MEAGHER &
                                                           FLOM LLP**
                                                           Four Times Square
                                                           New York, New York  10036-6522
                                                           Telephone:  (212) 735-3000
                                                           Facsimile:  (212) 735-2000
                                                           shepard.goldfein@skadden.com
                                                           clifford.aronson@skadden.com
                                                           paul.eckles@skadden.com
                                                           matthew.martino@skadden.com

                                                           Michael Nachwalter (Fla. Bar No. 099989)
                                                           Elizabeth B. Honkonen (Fla. Bar No. 014903)
                                                           Jalaine Garcia (Fla. Bar No. 058632)
                                                           **KENNY NACHWALTER, P.A.**
                                                           1100 Miami Center
                                                           201 South Biscayne Boulevard
                                                           Miami, Florida  33131-4327

Telephone:  (305) 373-1000
Facsimile:  (305) 372-1861
mnachwalter@kennynachwalter.com
ebh@kennynachwalter.com
jgarcia@kennynachwalter.com

*Counsel for Defendant Cemex Inc.*

*/s/ Frank Burt*
Frank Burt (Fla. Bar No. 197963)
**JORDEN BURT LLP**
1025 Thomas Jefferson St, NW
Washington, DC  20007-5208
Telephone:  (202) 965-8140
Facsimile:  (202) 965-8104
fgb@jordenusa.com

Richard J. Ovelmen (Fla. Bar No. 284904)
**JORDEN BURT LLP**
777 Brickell Avenue, Suite 500
Miami, Florida  33131-2803
Telephone:  (305) 347-6805
Facsimile:  (305) 372-4720
rjo@jordenusa.com

James L. Cooper
Ryan Z. Watts
Laura Cofer Taylor
**ARNOLD & PORTER LLP**
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  (202)-942-5000
Facsimile:  (202) 942-5999
James.Cooper@aporter.com
Ryan.Watts@aporter.com
Laura.Taylor@aporter.com

*Counsel for Defendant Tarmac America LLC*

*/s/ Marty Steinberg*
Marty Steinberg (Fla. Bar No. 187293)
D. Bruce Hoffman (Fla. Bar No. 958026)
**HUNTON & WILLIAMS LLP**
1111 Brickell Avenue, Suite 2500

*/s/ Richard B. Brosnick*
Richard B. Brosnick
**BUTZEL LONG**
380 Madison Avenue
22nd Floor
New York, New York  10017
Telephone:  (212) 818-1110
Facsimile:  (212) 818-0494
brosnick@butzel.com

Christopher B. Hopkins (Fla. Bar No. 116122)
**AKERMAN SENTERFITT**
Esperante Building, 4th Floor
222 Lakeview Avenue, Suite 400
West Palm Beach, Florida  33401-6147
Telephone:  (561) 653-5000
Facsimile:  (561) 659-6313
christopher.hopkins@akerman.com

*Counsel for Defendant VCNA Prestige Ready-Mix Florida, Inc.*

18

Miami, Florida  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
msteinberg@hunton.com

*Counsel for Defendant Florida Rock
Industries, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Jalaine Garcia
Jalaine Garcia

20

**SERVICE LIST**

| | |
|---|---|
| Jay L. Himes, Esq.<br>Hollis Salzman, Esq.<br>Gregory S. Asciolla, Esq.<br>Ryan G. Kriger, Esq.<br>**LABATON SUCHAROW LLP**<br>140 Broadway, 34th Floor<br>New York, New York   10005<br>Telephone:     (212) 907-0700<br>Facsimile:     (212) 818-0477<br>Email:  jhimes@labaton.com<br>Email:  hsalzman@labaton.com<br>Email:  gasciolla@labaton.com<br>Email:  rkriger@labaton.com<br><br>Michael D. Hausfeld, Esq.<br>William P. Butterfield, Esq.<br>Brian A. Ratner, Esq.<br>Ralph J. Bunche, Esq.<br>**HAUSFELD LLP**<br>1700 K Street NW, Suite 650<br>Washington, DC 20006<br>Telephone:  (202) 540-7200<br>Facsimile:  (202) 540-7201<br>Email:  mhausfeld@hausfeldllp.com<br>Email:  wbutterfield@hausfeldllp.com<br>Email:  bratner@hausfeldllp.com<br>Email:  rbunche@hausfeldllp.com<br><br>William A. Isaacson, Esq.<br>Matthew W. Friedrich, Esq.<br>**BOIES, SCHILLER & FLEXNER LLP**<br>5301 Wisconsin Ave., NW, Suite 800<br>Washington, DC 20015<br>Telephone: (202) 237-2727<br>Facsimile: (202) 237-6131<br>Email:  wisaacson@bsfllp.com<br>Email:  mfriedrich@bsfllp.com<br><br>*Interim Co-Lead Counsel (Direct Action)* | Robert C. Josefsberg, Esq.<br>Katherine W. Ezell, Esq.<br>Victor Diaz, Esq.<br>Alexander Rundlet, Esq.<br>**PODHURST ORSECK PA**<br>24 W. Flagler Street, Suite 800<br>Miami, Florida  33130<br>Telephone:  (305) 358-2800<br>Facsimile:  (305) 358-2382<br>Email:  rjosefsberg@podhurst.com<br>Email:  kezell@podhurst.com<br>Email:  vdiaz@podhurst.com<br>Email:  arundlet@podhurst.com<br><br>*Liaison Counsel (Direct Action)*<br><br>Arthur Halsey Rice, Esq.<br>**RICE PUGATCH ROBINSON &**<br>**SCHILLER**<br>101 N.E. 3rd Avenue, Suite 1800<br>Ft. Lauderdale, Florida 33301<br>Telephone: (305) 379-3121<br>Facsimile: (305) 379-4119<br>Email:  arice@rprslaw.com<br><br>Daniel Hume, Esq.<br>David E. Kovel, Esq.<br>Kenneth G. Walsh, Esq.<br>**KIRBY MCINERNEY LLP**<br>825 Third Avenue, 16th Floor<br>New York, New York 10022<br>Telephone: (212) 371-6600<br>Facsimile: (212) 751-2540<br><br>*Interim Co-Lead Class Counsel (Indirect Action)* |

21

Marty Steinberg, Esq.
D. Bruce Hoffman, Esq
Melissa L. Bilchik, Esq.
Rafael R. Ribeiro, Esq.
**HUNTON & WILLIAMS, LLP**
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
Email: msteinberg@hunton.com
Email: bhoffman@hunton.com
Email: mbilchik@hunton.com
Email: rribeiro@hunton.com

Ryan Shores, Esq.
**HUNTON & WILLIAMS, LLP**
1900 K. Street NW
Washington, DC 20006
Telephone: (202) 955-1500
Email: rshores@hunton.com

Melissa Levitt, Esq.
**HUNTON & WILLIAMS, LLP**
200 Park Avenue
New York, New York 10166
Telephone:  (212) 309-1000
Facsimile:  (212) 309-1100
Email:  mlevitt@hunton.com

*Counsel for Defendant Florida Rock
Industries, Inc.*

Franklin G. Burt, Esq.
Richard J. Ovelmen, Esq.
**JORDEN BURT, LLP**
777 Brickell Avenue, Suite 500
Miami, Florida 33131
Telephone: (305) 347-6833
Facsimile: (305) 372-9928
Email: fgb@jordenusa.com
Email: rjo@jordenusa.com

James L. Cooper, Esq.
Laura Cofer Taylor, Esq.
Ryan Z. Watts, Esq.
**ARNOLD & PORTER, LLP**
555 12th Street NW
Washington, DC 20004
Telephone: (202) 942-5000
Email: james.cooper@aporter.com
Email: laura.taylor@aporter.com
Email: ryan.watts@aporter.com

*Counsel for Defendant Tarmac America LLC*

Christopher B. Hopkins
**AKERMAN SENTERFITT**
Esperante Building, 4th Floor
222 Lakeview Avenue, Suite 400
West Palm Beach, Florida  33401-6147
Telephone:  (561) 653-5000
Facsimile:  (561) 659-6313
Email:  christopher.hopkins@akerman.com

Richard B. Brosnick
**BUTZEL LONG**
380 Madison Avenue, 22nd Floor
New York, New York  10017
Telephone:  (212) 818-1110
Facsimile:  (212) 818-0494
Email:  brosnick@butzel.com

*Counsel for Defendant VCNA Prestige Ready-
Mix Florida, Inc.*